1 | Joseph J. Tabacco, Jr. (SBN 75484)
Kristin J. Moody (SBN 206326)
2 | A. Chowning Poppler (SBN 272870)
**BERMAN DEVALERIO**
3 | One California Street, Suite 900
San Francisco, CA 94111
4 | Telephone: (415) 433-3200
Facsimile: (415) 433-6282
5 | Email: jtabacco@bermandevalerio.com
         kmoody@bermandevalerio.com
6 |      cpoppler@bermandevalerio.com

7 | *Local Counsel for Plaintiff and the Class*

8 | Patricia I. Avery
Matthew Insley-Pruitt
9 | Adam J. Blander
**WOLF POPPER LLP**
10 | 845 Third Avenue, 12th Floor
New York, NY 10022
11 | Telephone: (212) 759-4600
Email: pavery@wolfpopper.com
12 |      MInsley-Pruitt@wolfpopper.com
         ablander@wolfpopper.com
13 |
*Counsel for Plaintiff and the Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATASHA McLAUGHLIN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., d/b/a WELLS FARGO HOME MORTGAGE,<br><br>Defendant. | Civil Case No.: 3:15-cv-2904<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**CLASS ACTION**</u><br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff Latasha McLaughlin, by her attorneys, on behalf of herself and the Class set forth below, alleges the following upon information and belief, except for those allegations that pertain to Plaintiff, which are based on her personal knowledge:

### NATURE OF THE ACTION

1. Plaintiff brings this class action against Wells Fargo Bank. N.A. d/b/a Wells Fargo Home Mortgage (hereinafter, "Defendant," the "Bank," or "Wells Fargo") for its systematic violations of the Truth in Lending Act of 1968, as amended ("TILA"), 15 U.S.C. § 1601 *et seq.*, and Regulation Z, adopted pursuant to TILA, for failing to provide homeowners with an accurate statement regarding the mortgages that it services.

2. Specifically, Defendant has an obligation to prepare "payoff statements" that set forth the amounts required to fully satisfy all obligations secured by the loan serviced by Defendant. These payoff statements include information such as the outstanding principal balance, outstanding interest, amounts held in escrow, fees associated with the account, and projected interest if the amount due is paid in full by a certain date. However, while the Bank provides detailed listings for the homeowners' debts, it omits any reference to a category of funds that can be credited to the loan: proceeds from property insurance claims. These insurance proceeds—which, as in the case of Plaintiff, can be tens of thousands of dollars—are purportedly held in a "restricted escrow account" until the Bank either uses the funds to repair any property damage to the house or reduces the balance on the loan. But they do not appear, as they should, on the payoff statements.

3. Defendant's failure to account for such funds has the effect of overstating and exaggerating the obligations of Plaintiff and the members of the Class under their respective mortgage agreements. Defendant's conduct prejudices Plaintiff and the members of the Class because the payoff statements are the foundational documents for many critical events, including loan modification, loan refinancing, and in foreclosure proceedings.

### PARTIES

4. Plaintiff is a citizen of the State of Tennessee.

5. Defendant Wells Fargo Bank, N.A., a national banking association, provides personal and commercial banking services, offers deposits and loan products, and acts and operates as a mortgage lender and servicer. Defendant is the principal subsidiary of Wells Fargo & Company ("WFC"), and holds 91% of WFC's assets, constituting $1.5 trillion. Defendant's principal place of business is in San Francisco, California and its headquarters are located in Sioux Falls, South Dakota.

6. Wells Fargo Home Mortgage ("WFHM"), which is engaged in the business of servicing residential mortgages, is a division of Defendant.

7. Defendant is both a "creditor" and "servicer" as defined by TILA and Regulation Z. *See* 15 U.S.C. § 1602(g);12 C.F.R. 1026.36(c).

8. Defendant was the servicer of Plaintiff's mortgage loan at all pertinent times alleged herein.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1331.

10. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant is subject to jurisdiction, regularly conducts business, and has its principal place of business in this District.

## INTRADISTRICT ASSIGNMENT

11. Pursuant to Civil L.R. 3-5(b), intradistict assignment in San Francisco is proper because a substantial part of the misconduct which gave rise to the claim occurred in the City and County of San Francisco.

## THE TRUTH IN LENDING ACT ("TILA") AND REGULATION Z

12. The purpose of the TILA is, among other things, "to protect the consumer against inaccurate and unfair credit billing . . . practices." 15 U.S.C. § 1601(a).

13. As TILA is a consumer protection statute, it must be construed liberally and broadly in order to best serve Congressional intent.

14. Those bound by TILA and its implementing regulations are obligated to discharge their obligations with absolute compliance.

15. A "creditor," as pertinent here, is

> a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. §1602(g).

16. A "servicer," as pertinent here, is

> a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan).

\*   \*   \*

> Servicing means receiving any scheduled periodic payments from a borrower pursuant to the terms of any federally related mortgage loan, including amounts for escrow accounts under section 10 of RESPA [*Real Estate Settlement Procedures Act*] (12 U.S.C. 2609), and making the payments to the owner of the loan or other third parties of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the mortgage servicing loan documents or servicing contract.

12 CFR § 1024.2(b).

17. A consumer's need to be fairly apprised of her rights under a credit agreement is most acute when a lender maintains a security interest over her and her family's residence. It is against this backdrop that Congress empowered the Board of Governors of the Federal Reserve System (the "Board") to "prohibit acts or practices in connection with . . . mortgage loans that [it] finds to be unfair, deceptive, or designed to evade the provisions of this section[.]" 15 U.S.C. § 1639.

18. In connection with this authority, and in its effort to curb "abusive servicing practices[,]" the Board in 2008 proposed regulations prohibiting loan servicers "from failing to provide, within a reasonable time after receiving a request from the consumer or any person acting on behalf of the consumer, an accurate statement of the full amount required to pay the obligation in full as of a specified date." 73 Fed. Reg. 1672, 1703 (Jan. 9, 2008).

19. The Board expressed concern regarding

> the misalignment of incentives between consumers, servicers, and investors. Servicers contract directly with investors, and consumers are not a party to the contract. The investor is principally concerned with maximizing returns on the mortgage loans. So

CLASS ACTION COMPLAINT                                                                                       3

> long as returns are maximized, the investor may be indifferent to the fees the servicer charges the borrower. Consumers do not have the ability to shop for servicers and have no ability to change servicers (without refinancing). As a result, servicers do not compete in any direct sense for consumers. Thus, there may not be sufficient market pressure on servicers to ensure competitive practices.
>
> [S]ervicers may not timely credit, or may misapply, payments, resulting in improper late fees. . . . The Board is also concerned about the transparency of servicer fees and charges, especially because consumers may have no notices of such charges prior to their assessment. Consumers may be faced with charges that are confusing, excessive, or cannot easily be linked to a particular service. ***In addition, servicers may fail to provide payoff statements in a timely fashion, thus impeding consumers from refinancing existing loans.***

*Id.* at 1702 (emphasis added).

20. The inverse of the Board's reasoning is equally true: just as servicers have an incentive to disclose fees and charges in the least transparent method possible, they are equally disinclined to notify consumers of the availability of funds, such as insurance payments, which may be credited in their favor.

21. In 2010, Congress enacted the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 12 U.S.C. § 5301 *et seq.*, which established the Consumer Finance Protection Bureau ("CFPB"). As part of the Act, it amended 15 U.S.C. § 1639 to empower the CFPB, in place of the Board, to "prohibit acts or practices in connection with . . . mortgage loans that the Bureau finds to be unfair, deceptive, or designed to evade the provisions of this section[.]" 15 U.S.C. § 1639(p)(2).

22. The Board promulgated regulations concerning payoff statements, which exist today in Regulation Z:

> In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date.

12 C.F.R. 1026.36(c)(3).

23. Also as part of Dodd-Frank amendments to TILA, Congress enacted Section 129G, which, in substance, codifies the requirement to provide accurate payoff statements:

> A creditor or servicer of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower.

15 U.S.C. § 1639g.

CLASS ACTION COMPLAINT                                                        4

24. In its Official Interpretations, the CFPB states it "believes payoff statements should be issued according to the best information available at the time[.]" 78 Fed. Reg. 10902, 10958 (February 14, 2013).

25. Violators of TILA are liable, among other things, for

- any resultant actual damages (15 U.S.C. § 1640(a)(1));
- statutory damages,
    o in individual actions not less than $400 or greater than $4,000 (15 U.S.C. § 1640(a)(2)(A)(iv)),
    o in class actions, the lesser of $1 million or 1 per centum of the net worth of the creditor (15 U.S.C. § 1640(a)(2)(B)); and
- costs and attorneys' fees (15 U.S.C. § 1640(a)(3)).

## FACTUAL ALLEGATIONS

**Defendant's Rights Under the Mortgage to Administer Insurance Proceeds**

26. On or about September 23, 2005, Plaintiff took out a mortgage, secured by her residential property, located at 4382 Dongounery Cove, in Memphis, Tennessee ("the Property"), for the principal amount of $156,370.00 ("the Mortgage"). The footer of the Mortgage's Deed of Trust states it is an "FHA TENNESSEE DEED OF TRUST—MERS," which indicates that it conforms to the servicing requirements established by the United States Department of Housing and Urban Development ("HUD").

27. Section Four of the Mortgage's Deed of Trust, entitled "Fire, Flood and Other Hazard Insurance," requires the Borrower to maintain property insurance, and provides that the insurance policies "shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender."

28. Section Four continues:

> All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument . . . , or (b) to the restoration or repair of the damaged Property . . . . Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

1     29. As the above clause makes abundantly clear, the Bank is required to use the insurance payments to either (a) reduce Borrower's indebtedness, or (b) repair the property. The Bank's retention of insurance payments for any other reason, or for no discernible reason whatsoever, is strictly prohibited.

    30. In those circumstances where the property claim exceeds the outstanding arrearages on a loan, at least a portion of the property claim would revert to the borrower.

**Defendant Deposits Plaintiff's Insurance Payments**

    31. On or about January 29, 2014, Plaintiff's Property flooded, causing significant property damage.

    32. Plaintiff submitted a claim to her insurance company, State Farm, which thereafter issued a series of checks jointly payable to Plaintiff and Defendant (and, in one instance, a contractor making repairs was also a joint payee).

    33. On or about June 9, 2014, Defendant deposited into its account a $10,904.95 check from State Farm, which Plaintiff had endorsed and turned over to Defendant. On or about June 27, 2014, Defendant deposited into its account a $5,585.40 check from State Farm, which Plaintiff had also endorsed and turned over to Defendant.

    34. Defendant now holds a balance of $16,490.35 in insurance payments, which it has failed to either disburse for repairs of the Property or apply to the reduction of Plaintiff's indebtedness.

**Defendant's inaccurate and unlawful payoff statement**

    35. Beginning in September 2014, due in great part to financial hardship arising from Defendant's refusal to disburse the insurance payments, Plaintiff found herself unable to make her monthly mortgage payments. As of April 16, 2015, the aggregate value of Plaintiff's missed monthly payments ($11,019.52 plus $220.40 in unpaid late charges) is still considerably less than the insurance payments Defendant is withholding ($16,490.35).

    36. Defendant informed Plaintiff that it had accelerated her debt under the Note and referred her Mortgage for foreclosure.

CLASS ACTION COMPLAINT      6

1       37.     On or about March 13, 2015, Plaintiff provided Defendant with a written request
2  for a payoff statement.
3       38.     On April 1, 2015, Defendant provided complainant with a written payoff
4  statement, in which it alleged $188,825.17 as due.  It itemized as follows:  $180,616.96 in
5  unpaid principal balance; $5,719.52 in interest; $1,642.03 in escrow overdraft; $262.00 in
6  unpaid advance balance; $109.26 in "Prorated Mortgage Insurance Due to HUD;" $220.40 in
7  unpaid late charges; and $255.00 in foreclosure fees and costs."  In addition, Defendant advised
8  that it had recently disbursed $1,288.06 in tax payments and $2,865.00 in property insurance
9  premium disbursements from a separate escrow account.
10      39.     Nowhere in Defendant's payoff statement, however, is there any mention of the
11 existence of $16,490.35 in insurance payments, which were potentially available, in whole or in
12 part, as a credit against Plaintiff's debt.
13      40.     The deceptive nature of this omission in the payoff statement is exacerbated by
14 three additional factors created by Defendant:
15      41.     *First*, Defendant cautions Plaintiff in the payoff statement that "[f]ees, costs and
16 advances for taxes and insurance payments may also be due in addition to the amount quoted
17 above."  Defendant, however, fails to advise Plaintiff the flip-side of this statement:  in light of
18 Plaintiff's restricted escrow balance of $16,490.35, the amount owed may, in fact, be less than
19 $188,825.17.
20      42.     *Second*, in its periodic monthly account statements, under the heading "Balance
21 summary," Defendant includes an entry for Plaintiff's "restricted escrow balance" of
22 $16,490.35, representing Plaintiff's insurance payments held by it.  Immediately below this
23 entry, Defendant advises: "*Contact Customer Service for your payoff balance*[.]" (Emphasis in
24 original.)  The payoff statement, however, does not include this same information, conveying
25 the false and misleading implication that the restricted escrow funds have no bearing on
26 Plaintiff's obligations under her mortgage loan.
27      43.     *Third*, the precision of the other information included in the payoff statement,
28 such as showing the principal, interest, escrow, and other fees due, with accuracy up to the cent,

CLASS ACTION COMPLAINT                                                                              7

conveys the misleading impressing that the payoff statement describes a complete and accurate picture of Plaintiff's mortgage loan.

44. Defendant's failure to account for the insurance payments has frustrated Plaintiff's ability to modify her mortgage agreement. In May 2015, Defendant denied Plaintiff's application for loan modification.

45. Additionally, Defendant has relied on the incomplete figures reflected in the payoff statement in collateral actions to enforce the debt. For example, a law firm representing Wells Fargo recently demanded payment of the accelerated debt under the Mortgage without accounting for her restricted escrow balance of $16,490.35.

## CLASS ALLEGATIONS

46. Plaintiff brings this suit as a class action on behalf of herself and on behalf of others similarly situated pursuant to Federal Rules of Civil Procedure, rules 23(a), 23(b)(2), and/or 23(b)(3) (the "Class"). The proposed Class consists of:

> all borrowers that have or had mortgages serviced by Defendant, on property located within the United States, (i) who may receive or are entitled to receive payoff statements; or (ii) who have received mortgage payoff statements from Defendant, which failed to disclose the amount of insurance proceeds held by Defendant.

47. The members of the Class are so numerous that joinder is impracticable. Defendant is one of the largest mortgage servicers in the country. According to a news release dated April 14, 2015, Defendant reported a residential mortgage servicing portfolio of $1.7 trillion, and $1.5 billion in mortgage banking noninterest income in its last quarter. There are over eighteen Wells Fargo branches in Tennessee alone.

48. Plaintiff's claims are typical of the claims of the entire Class because Defendant failed to account for insurance proceeds in its payoff statement to Plaintiff. Defendant has a common course of conduct of failing to account for such funds in payoff statements regarding other Class members.

49. Plaintiff will fairly and adequately represent and protect the interests of the other Class members for purposes of Fed. R. Civ. P. 23(a)(4). Plaintiff has no interests antagonistic

to those of other Class members.  Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent them.

50. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

51. Class certification is appropriate under Fed. R. Civ. P. 23 (a) and 23(b)(3) because questions of law and fact are common and exist as to all members of the Class and predominate over any questions affecting only individual members of the Class, including, but not limited to:

(a) whether Defendant's practice of omitting any reference to unused insurance proceeds in its payoff statements violates TILA and its implementing regulations; and

(b) the nature and extent of any other relief that should be provided.

52. Class certification under Fed. R. Civ. P. 23(b)(3) is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged.  Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

53. Class action is also appropriate as Congress intended class actions to be a principal enforcement mechanism under TILA.  *See* 15 U.S.C. § 1640(a)(2)(B).

54. Class members have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct.

## COUNT I

**(Violation of TILA and Regulation Z)**

55. Plaintiff repeats the allegations in the above paragraphs as if fully set forth herein.

56. Defendant's failure to account for insurance payments in its payoff statements has the effect of overstating and exaggerating Plaintiff's obligation under the Mortgage, and

1 thus constitutes an "[in]accurate statement of the total outstanding balance that would be
2 required to pay the consumer's obligation in full" (12 C.F.R. § 1026.36(c)(3)) and an
3 "[in]accurate payoff balance" (15 U.S.C. § 1639g).

4     57.    Consequently, Defendant's payoff statement is in violation of TILA and
5 Regulation Z.

6     58.    Failure to account for insurance payments in payoff statements imposes drastic
7 consequences upon the recipient Class members, such as Plaintiff.

8     59.    In many jurisdictions, and under many mortgage agreements, a servicer must
9 demand from a homeowner that she pay off the mortgage prior to its commencement of a
10 mortgage foreclosure proceeding. Additionally, payoff statements often serve as *prima facie*
11 evidence in foreclosure proceedings of the amount due.

12     60.    Similarly, lenders rely upon payoff statements when determining whether to
13 offer refinancing on a mortgage and/or the terms of such a refinancing agreement. The
14 exaggerated debt also has the potential to adversely impact the credit ratings of Plaintiff and the
15 members of the Class. Defendant's conduct has the effect of "impeding consumers from
16 refinancing existing loans." 73 Fed. Reg. at 1702.

17     61.    Defendant's deceptive payoff statements enables it to commence foreclosure
18 proceedings against Plaintiff and members of the Class, in which it exaggerates the amounts
19 owed. Its failure to apprise Plaintiff and members of the Class of insurance payments frustrates
20 their ability to refinance their mortgage and weakens their negotiating leverage should they
21 wish to settle a foreclosure claim.

22                              **PRAYER FOR RELIEF**

23     WHEREFORE, Plaintiff, on behalf of herself and all members of the Class, prays for
24 relief as follows:

25     A.    Determining that this action may proceed as a class action under Rule 23(b) (2)
26 and (3) of the Federal Rules of Civil Procedure, appointing Plaintiff's counsel as counsel for the
27 Class, and directing that proper notice be distributed to the Class;

28

B.  Awarding damages pursuant to 15 U.S.C. § 1640(a)(1), 15 U.S.C. § 1640(a)(2)(A)(iv), and 15 U.S.C. § 1640(a)(2)(B), together with prejudgment interest;

C.  Enjoining Defendant from future violations and directing Defendant to include on all future payoff statements any insurance payments held by it;

D.  Awarding reasonable attorneys' fees and costs, including experts' fees; and

E.  Granting such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all matters so triable.

Dated:  June 23, 2015

**BERMAN DeVALERIO**

By: */s/ Joseph J. Tabacco, Jr.*
     Joseph J. Tabacco, Jr.

Kristin J. Moody
A. Chowning Poppler
One California Street, Suite 900
San Francisco, CA 94111

Telephone:  (415) 433-3200
Facsimile:  (415) 433-6282
Email: jtabacco@bermandevalerio.com
        kmoody@bermandevalerio.com
        cpoppler@bermandevalerio.com

*Local Counsel for Plaintiff and the Class*

Patricia I. Avery
Matthew Insley-Pruitt
Adam J. Blander
**WOLF POPPER LLP**
845 Third Avenue, 12th Floor
New York, NY 10022
Telephone:  (212) 759-4600
Email: pavery@wolfpopper.com
        MInsley-Pruitt@wolfpopper.com
        ablander@wolfpopper.com

*Counsel for Plaintiff and the Class*