IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LATASHA MCLAUGHLIN, on behalf of herself and all others similarly situated,

    Plaintiff,

  v.

WELLS FARGO BANK, NA,

    Defendant.

No. C 15-02904 WHA

**ORDER THAT TILA REQUIRED INSURANCE PROCEEDS TO BE REFLECTED IN PAYOFF STATEMENT**

    The stated purpose of the Truth in Lending Act is "to assure a meaningful disclosure of credit terms" to consumers and authorizes the Consumer Financial Protection Bureau to implement regulations to promote this purpose. 15 U.S.C. 1601(a); 15. U.S.C. 1639(g). Under TILA's Regulation Z, a lender, assignee, or loan servicer must, in response to a borrower's request, provide an "accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specific date" based on the "best information available." 12 C.F.R. 1023.36(c)(3); 78 Fed. Reg. 10902, 10958 (Feb. 14, 2013).

    In early 2015, plaintiff Latasha McLaughlin submitted, in regards to her mortgage, a request for a payoff statement from defendant Wells Fargo Bank, NA. In response, Wells Fargo sent plaintiff a payoff statement declaring her outstanding balance to be $188,825.17, which included unpaid principal, interest, escrow overdraft, advance balances, late charges, and foreclosure costs. This statement did not address $16,490.35 in insurance payments that plaintiff

received as a result of a flood on her property, which monies she duly tendered to defendant bank a year earlier and which defendant bank still held (Compl. ¶¶ 37–39).

The central issue presented by this case is whether TILA required Wells Fargo to credit plaintiff's balance on her payoff statement with funds that could be applied to plaintiff's balance — specifically, whether TILA required defendant to note the $16,490.35 in property insurance proceeds. This order holds that TILA does so require.

No decision from our court of appeals has ever addressed the issue of whether TILA compels lenders to include "potential" credits in payoff statements. The regulation's language simply states that the payoff statement must be "accurate" and "based on the best information available." 12 C.F.R. 1023.36(c)(3); 78 Fed. Reg. 10902, 10958 (Feb. 14, 2013). Our court of appeals has stated, however, that courts should "construe [TILA's] provisions liberally in favor of the consumer." *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1118 (9th Cir. 2009).

Here, common sense dictates that the insurance proceeds, still languishing in a Wells Fargo account for plaintiff's eventual benefit, should have been included in the payoff statement. Pursuant to the mortgage's deed of trust, defendant had two options once it received plaintiff's insurance payments (plaintiff's RJN, Exh. 1 at ¶4):

> All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts . . . and then to repayment of principal, or (b) to the restoration or repair of the damaged property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments . . . or change the amount of such payments.

Taking either option, it is indisputable that the $16,490.35 in insurance proceeds would have been credited to plaintiff's loan balance in some way. The first option explicitly provided for this credit. As to the second option, if plaintiff wished to fully satisfy her loan by paying the amount quoted on the payoff statement, the money would clearly *not* be used for restoration or repair, as the bank would no longer have an interest in the property once the loan had been paid. Thus, based on the "best information available," as mandated by TILA, an "accurate" payoff statement should have deducted the insurance proceeds still held by the bank and at least should

2

1  have added a note that the impounded funds potentially could be used for home repair in the
2  event the loan was not paid off.

3  It would be wrong to allow a payoff statement that ignored the insurance funds to remain
4  in circulation. Overly-cautious and under-informed bank employees would forever resort to the
5  payoff statement's bottom line and inflate the true amount needed to pay off the loan. No doubt,
6  the borrower's protests about the insurance money would fall on deaf ears. Plaintiff would get a
7  run-around and forever be fighting with low-level bank staff insisting that the bank already had
8  other funds available for a credit while the staff shrugged their shoulders and pointed to the
9  misleading payoff statement.

10  The principal purpose of TILA's payoff statement provision is to provide borrowers with
11  the exact amount that the borrower needs to pay to retire the loan based on the "best information
12  available." Here, the best information available clearly included the existence of plaintiff's
13  insurance proceeds. As a matter of law, the bank is wrong on this one.

14  Alternatively, Wells Fargo moves to dismiss based on the complaint's allegation that
15  defendant was merely the servicer of plaintiff's loan, and thus TILA liability did not attach. As
16  pointed out in plaintiff's opposition, however, defendant became the owner (rather than merely
17  the servicer) of plaintiff's mortgage in 2012 and thus TILA clearly applies (plaintiff's RJN, Exh.
18  1). Although plaintiff did not explicitly allege this in her complaint, this order takes judicial
19  notice of the fact that defendant owned plaintiff's mortgage at the time it sent the payoff
20  statement at issue, as stated below.

21  A court may judicially notice a fact that is not subject to reasonable dispute because it:
22  "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately
23  and readily determined from sources whose accuracy cannot reasonably be questioned." FRE
24  201(b). Both sides have filed requests for judicial notice. Neither side opposes the other's
25  requests. Plaintiff's request for judicial notice of Exhibits 1–3 is **GRANTED**. This order does not
26  rely on any of the other items and the other requests for judicial notice are thus **DENIED AS**
27  **MOOT**.
28

3

**CONCLUSION**

For the reasons stated above, defendant's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 29, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

4