IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LATASHA MCLAUGHLIN, on behalf of herself and all others similarly situated,

    Plaintiff,

  v.

WELLS FARGO BANK, NA,

    Defendant.

No. C 15-02904 WHA

**ORDER CERTIFYING TWO CLASSES**

## INTRODUCTION

In this TILA action, plaintiff borrower seeks certification of two classes. This order certifies a damages class and a declaratory class for TILA claims, appoints the named plaintiff as class representative, and appoints plaintiff's counsel of record as class counsel.

## STATEMENT

**1. NAMED PLAINTIFF LATASHA MCLAUGHLIN.**

Our named plaintiff, Latasha McLaughlin, brings this Truth in Lending Act (TILA) action against defendant bank, the owner and servicer of her home mortgage. Plaintiff borrower alleges that the bank breached its TILA obligation to provide her with an accurate payoff statement regarding her home mortgage.

In June 2014, plaintiff borrower returned home to find that her home's pipes had burst and her home had flooded (McLaughlin Tr. at 27:4–29:6). Plaintiff borrower submitted a claim to her insurance company, which issued a series of checks jointly payable to plaintiff borrower

and the bank.[1] Plaintiff borrower endorsed the checks and turned them over to the bank. In total, the bank held a balance of $16,490.35 of insurance proceeds (McLaughlin Tr. at 27–29, 40).

Plaintiff borrower retained a contractor to repair the damage to her home. A series of disagreements over the contractor's work ensued and plaintiff borrower fired the contractor in May 2014. A subsequent inspection by the bank concluded that only 20 percent of the repairs had been completed. Plaintiff borrower disputed the amount she owed the contractor and filed a lawsuit against the contractor.

Plaintiff borrower then contacted the bank about how to proceed with the repairs to her home. A bank representative advised her to find another contractor. Using her own money, plaintiff borrower proceeded to make the repairs. The bank, however, refused to release any of the funds to pay for the additional repairs (McLaughlin Tr. 77, 81, 91).

Starting in September 2014, plaintiff borrower fell behind on her mortgage payments, in part because she used her own money to pay for the repairs. As of April 2015, her past due balance totaled $11,019.52. The bank informed plaintiff borrower that it had accelerated her debt and referred her mortgage for foreclosure (Compl. ¶ 35–36).

In March 2015 and again in April 2015, plaintiff borrower submitted requests for a payoff statement from the bank in order to investigate the possibility of re-financing her loan or conducting a short sale (McLaughlin Tr. 112, 136). Neither payoff statement reflected the insurance proceeds. In response to the April request, the bank sent plaintiff borrower a payoff statement declaring her outstanding balance to be $188,825.17, which included unpaid principal, interest, escrow overdraft, advance balances, late charges, and foreclosure costs. This statement did not address the $16,490.35 in insurance payments, which the bank still held (Compl. ¶¶ 37–39).

On June 23, 2015, plaintiff borrower filed this action. Three months later, in September of 2015, plaintiff borrower settled the dispute with the contractor and the bank issued the contractor a check for $4,000 from the insurance proceeds. The additional insurance proceeds

---

[1] One of these checks was also payable to a contractor as a joint payee (Compl. ¶ 32).

were then applied by the bank to the past due balance on the mortgage (McLaughlin Tr. at 113, 141–142).

### 2. THE DEED.

In September 2005, plaintiff borrower obtained a mortgage in the amount of $156,370.00 for her home in Tennessee. In 2012, the bank became the owner of that deed (*see* Dkt. No. 36). The deed of trust specifically addressed insurance proceeds:

> All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument . . . ,or (b) to the restoration or repair of the damaged Property . . . . Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

### 3. THE TRUTH IN LENDING ACT AND REGULATION Z.

The stated purpose of the Truth in Lending Act is "to assure a meaningful disclosure of credit terms" to consumers and authorizes the Consumer Financial Protection Bureau to implement regulations to promote this purpose. 15 U.S.C. 1601(a); 15 U.S.C. 1639(g). Under TILA's Regulation Z, a lender, assignee, or loan servicer must, in response to a borrower's request, provide an "accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specific date" based on the "best information available." 12 C.F.R. 1023.36(c)(3); 78 Fed. Reg. 10902, 10958 (Feb. 14, 2013).

### 4. THE BANK'S PRACTICES AND PROCEDURES.

The bank maintains certain practices with respect to requests for a payoff statement. A borrower can request that a written payoff statement be sent to them either by going online, calling an automated telephone program, or talking with a customer service representative. A borrower can also access payoff information without receiving a written payoff statement by viewing the information online, prompting an automated telephone program, or by requesting it from a customer service representative over the phone (Leo Tr. 20–21).

A payoff statement is typically generated automatically and, in the usual course, a payoff statement does *not* include insurance proceeds held in a restricted escrow account (*id.* at 32). In certain limited circumstances, a payoff statement is not generated automatically. For example, if a homeowner specifically requests that insurance proceeds be included on the

3

statement, or if a loan is in foreclosure, the request is sent to the Payoff Quotes Group (*id.* at 21, 30). In that case, a determination is made as to whether "funds are owed to contractors for repairs made or initiated from the insurance proceeds." If any funds are owed, the insurance proceeds are not included on the payoff statement (Opp. at 5; Insley-Pruitt Decl. Ex. G).

### 5. PROCEDURAL HISTORY.

On June 23, 2015, plaintiff borrower filed a complaint in this action. The bank subsequently moved to dismiss, arguing that TILA does not require lenders to list insurance proceeds on payoff statements. An order denied the bank's motion, holding that "an accurate payoff statement should have deducted the insurance proceeds still held by the bank and at least should have added a note that the impounded funds potentially could be used for home repair in the event the loan was not paid off" (Dkt. No. 36 at 2–3). The bank then moved for leave to file a motion for reconsideration of that order. An order denied that motion, noting, in pertinent part, that the bank had already raised all of the same arguments on the motion to dismiss (Dkt. No. 46). Specifically, the order noted that plaintiff borrower had previously argued that "insurance proceeds may be owed to a contractor" but explained that the order on the motion to dismiss had rejected those arguments.

In February 2016, the bank moved to stay all proceedings pending the Supreme Court's decision in *Spokeo, Inc. v. Robins*, arguing that the decision would impact whether or not plaintiff borrower had standing to assert her individual and class claims. An order denied the stay of all proceedings, noting that "plaintiff Latasha McLaughlin has alleged harm going well beyond the bare violation of a federal statute" (Dkt. No. 89 at 1). The order noted, however, that *Spokeo* could affect the construction of a potential class at the Rule 23 stage and postponed the hearing on the class certification motion until the decision came down in *Spokeo*. On May 16, 2016, the Supreme Court reached a decision in *Spokeo*. The parties have provided supplemental briefing on the impact of *Spokeo*, which is considered below.

This order follows full briefing and oral argument.

### 6. CLAIMS FOR RELIEF AND PROPOSED CLASSES.

Plaintiff borrower alleges that the bank violated TILA and Regulation Z by failing to account for insurance proceeds on payoff statements. She seeks damages pursuant to TILA (15 U.S.C. 1640(a)(1)–(a)(2)).[2] Plaintiff borrower seeks certification of the following damages class:

> all borrowers with mortgages serviced and owned by Wells Fargo Bank, N.A. ("Wells Fargo") who, since June 23, 2014, have received payoff statements which failed to disclose property insurance claim funds ("the Damages Class").

The critical date of June 23, 2014, reflects the one-year statute of limitations before the filing of the complaint on June 23, 2015. This proposed class definition is a narrower version than that set forth in the complaint in that it is limited to loans both serviced *and owned* by the bank. The class is also different in that the one set forth in the complaint limited the class to property located within the United States (Comp. ¶ 46).

Plaintiff borrower also seeks injunctive relief based on the same TILA claim. Specifically, plaintiff borrower seeks an injunction enjoining the bank "from future violations and directing Defendant to include on all future payoff statements any insurance payments held by it." Plaintiff borrower seeks certification of the following injunctive class:

> all borrowers with mortgages serviced and owned by Wells Fargo who are entitled to receive payoff statements, so that Wells Fargo is required to disclose property insurance claim funds in payoff statements ("the Injunctive Class").

As with the damages class, this proposed class definition is a narrower version than that set forth in the complaint in that it is limited to loans both serviced *and owned* by the bank.

## ANALYSIS

Class certification is appropriate when a plaintiff can show that all of the prerequisites of Rule 23(a) and one of the requirements of Rule 23(b) has been met. *Abdullah v. United States Security Associates, Inc.*, 731 F.3d 952, 956–57 (9th Cir. 2013). "Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification

---

[2] In her motion for class certification, plaintiff borrower stated that she "is only seeking statutory damages and injunctive relief, and is not seeking compensatory damages" (Mtn at 14). In her complaint, however, plaintiff borrower appeared to assert statutory and actual damages. Regardless, the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3). *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

5

has met the prerequisites of Rule 23." *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir.2012) (internal quotations omitted). Merits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195, 185 L. Ed. 2d 308 (2013).

Rule 23 requires a court granting class certification to find (1) numerosity of the class; (2) commonality of legal or factual questions; (3) typicality of the named plaintiff's claims and defenses; and (4) adequacy of the named plaintiff to protect the interests of the class. Plaintiff in this action seeks certification of the proposed classes under both Rule 23(b)(2) and Rule 23(b)(3). Certification under Rule 23(b)(2) requires the additional finding that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Certification under Rule 23(b)(3) requires the additional finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**1. NUMEROSITY.**

The numerosity requirement of Rule 23(a)(1) is satisfied when "joinder of all members is impracticable." The numerosity requirement is not tied to any fixed numerical threshold, but courts generally find the numerosity requirement satisfied when a class includes at least forty members. *Rannis v. Recchia*, 380 F. App'x 646, 650–51 (9th Cir. 2010).

To establish that the numerosity requirement has been met, plaintiff borrower points to a list of payoff statements generated since June 23, 2014, where the bank held insurance proceeds. Because the list contains loans owned by the bank *and* loans owned by other entities (the proposed class includes only the former), plaintiff's counsel performed an analysis to

6

1  determine which loans on the list had the same investor code as plaintiff borrower.[3]  Plaintiff's
2  counsel determined that 220 mortgages on the list were owned by the bank (Dkt. No. 8205).[4]

3  Plaintiff borrower acknowledges that the list may include statements that accurately
4  reflected insurance proceeds because the bank permits the inclusion of insurance proceeds in
5  certain limited circumstances.  For example, the bank may permit the inclusion of insurance
6  funds where *no* funds are owed to a contractor *and* where either a borrower specifically requests
7  their inclusion or a loan is in foreclosure (Leo Tr. at 21, 20; Insley-Pruitt Decl. Ex. G).  Because
8  these circumstances are quite limited, and because the bank admits that "a payoff statement
9  does not ordinarily reflect property insurance proceeds" (Second Insley-Pruitt Decl. Ex. 1 at 3),
10 this order concludes that the proposed damages class would satisfy the numerosity requirement.

11 **2. COMMONALITY.**

12 A class has sufficient commonality under Rule 23(a)(2) if "there are questions of law or
13 fact common to the class."  Rule 23(a)(2) does not require each member in a class to have
14 identical factual and legal issues surrounding their claim.  To establish commonality, the claims
15 must depend upon a "common contention" that is "capable of classwide resolution — which
16 means that determination of its truth or falsity will resolve an issue that is central to the validity
17 of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350
18 (2011).

19 The bank argues that the proposed class does not satisfy commonality because
20 determining whether the bank violated TILA with respect to any given payoff statement
21 "requires an individualized examination of the unique circumstances surrounding a borrower's
22 property claim and specifically, whether third-parties have, or could reasonably be expected to
23 have, a legitimate interest in the insurance proceeds" (Opp. at 16).

---

[3] Plaintiff borrower asserts that, despite discovery requests that the bank provide information sufficient to determine "the originator, owner, assignee, or investor of the mortgage," the bank has only provided "investor code" information.

[4] The bank has also admitted that "more than 100 borrowers received a payoff statement while defendant held property insurance proceeds" (Second Insley-Pruitt Decl. Ex. 1 at 3).

7

1   The bank has repeatedly asserted a version of this argument before the Court. In its
2 motion to dismiss, the bank argued that "insurance may be owed to a contractor for repair work
3 already performed" (Dkt. No. 20). At oral argument on the motion to dismiss, the bank argued
4 that "those funds could be owed to a contractor for work that's already performed." In its
5 motion for leave to file a motion for reconsideration, the bank argued that the Court's order
6 "ignore[d] valid claims to insurance proceeds by contractors who have performed repairs on the
7 properties" (Dkt. No. 40). This Court has already disagreed with this argument repeatedly and
8 held that the "best information available" as required under Regulation Z included the existence
9 of plaintiff borrower's insurance proceeds — despite any contractor's claims to the funds (Dkt.
10 No. 36).

### 3. ADEQUACY.

The adequacy requirement of Rule 23(a)(4) permits certification only if "the representative parties will fairly and adequately protect the interests of the class." The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiff and counsel will vigorously fulfill their duties to the class. *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 985 (9th Cir. 2011).

The bank does not assert particular shortcomings on the part of plaintiff borrower or her counsel. The bank instead re-hashes the argument that plaintiff is not entitled to relief under TILA because a contractor had made a claim to the funds. As above, these arguments are unpersuasive.

The bank also asserts that plaintiff borrower is not an adequate plaintiff because she does not have standing to pursue her claims under *Spokeo*. In *Spokeo*, the Supreme Court considered whether a plaintiff had standing to sue an internet search engine over the publication of allegedly erroneous information. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). The Court explained that "the violation of a procedural right granted by statute *can be sufficient* in some circumstances to constitute an injury in fact." *Id.* at 1549 (emphasis added). The Court remanded for further consideration of whether plaintiff had sufficiently alleged an injury that is both concrete and particularized.

8

1    The bank argues that the harm alleged by plaintiff borrower is "akin to the no-harm
2 procedural violations" detailed by the Supreme Court in *Spokeo* (Dkt. No. 110). Not so. In
3 *Spokeo*, the Court acknowledged that not all inaccuracies cause harm or present material risk of
4 harm. As an example, the Court explained that "[i]t is difficult to imagine how the
5 dissemination of an incorrect zip code, without more, could work any concrete harm." The
6 inaccuracy here is in no way akin to an inaccurate zip code. The bank's effort to downplay the
7 harm done by an inaccurate payoff statement is unconvincing.

8    Plaintiff borrower has alleged sufficient harm or material risk of harm to assert her
9 TILA claims.[5] Facing foreclosure, she investigated re-financing her mortgage or conducting a
10 short sale. Her inaccurate payoff statement directly affected her ability to pursue these options
11 for avoiding foreclosure.

12    Moreover, once an erroneous record (like a payoff statement) finds its way into a bank's
13 files, bank clerks and officers are prone forever after to cite and rely on the misleading
14 information — to the prejudice of the borrower. The borrower, of course, may recognize the
15 problem but is brought to tears by the obstinance of bank personnel in refusing to deviate from
16 the erroneous record. The borrower gets a run-around. The bank staff shrug their shoulders and
17 point to the misleading payoff statement.

18    The bank also argues that plaintiff borrower is not a member of the proposed injunctive
19 relief class and thus is not an adequate representative of that class (Opp. at 14). Specifically,
20 the bank points out that plaintiff borrower no longer has insurance proceeds in a restricted
21 escrow account. Our court of appeals has recognized an exception to the mootness doctrine,
22 however, for "inherently transitory claims" in which a plaintiff's claims are "live" when filed
23 but moot before adjudication of the class certification motion. *Wade v. Kirkland*, 118 F.3d 667,
24 670 (9th Cir. 1997). This exception is appropriate where "there is a constantly changing

---

[5] In its supplemental briefing, the bank now asserts that standing "is a requirement that must be established for each member of the class" (Dkt. No. 110 at 5). Plaintiff borrower points out that the bank previously conceded that standing is satisfied if at least one named plaintiff meets the requirements (Dkt. No. 73). Moreover, the bank cites to no authority to support its new position. Here, plaintiff borrower has standing to assert her TILA claim; so too does the class. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements").

9

putative class." Under the "inherently transitory" exception, the court can certify a class "even though the named plaintiff's claims are already moot, since the 'relation back' doctrine will relate to [plaintiff's] standing at the outset of the case. This order holds that the "inherently transitory" exception is appropriate here. The bank will at any given time have a class of borrowers for whom it holds insurance proceeds; that class, however, is likely to be a constantly changing class as the funds are dispersed. Here, plaintiff borrower had standing to pursue injunctive and declaratory relief under her TILA claim when she filed the complaint. Under the "inherently transitory" doctrine, she has standing now to pursue injunctive and declaratory claims. *See also Ellsworth v. U.S. Bank*, N.A., 30 F. Supp. 3d 886, 908-09 (N.D. Cal. 2014) (Magistrate Judge Laurel Beeler) (refusing to dismiss an "inherently transient claim" for lack of standing in allegations related under the National Flood Insurance Act).

This order finds that plaintiff borrower would be an adequate representative of the TILA classes under consideration. This order also finds that plaintiff's counsel of record would be adequate class counsel for the TILA classes under consideration.

### 4. TYPICALITY.

The typicality requirement of Rule 23(a)(3) is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." A plaintiff's claims are typical if they "are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

The bank argues that plaintiff borrower's claim is not typical of the class because plaintiff borrower was involved in a months-long dispute with the contractor. Elsewhere in its opposition, the bank argues that this exact issue *is* typical of the class — making class-wide proof unworkable. Here, the evidence shows — and the bank does not dispute — that it routinely omits insurance proceeds from payoff statements (Leo Tr. at 32). Plaintiff borrower's experience is typical of the other class members. She therefore satisfies the typicality requirement as a representative of the proposed TILA classes under consideration.

### 5. RULE 23(b)(2) GENERALLY APPLICABLE ACT.

Certification under Rule 23(b)(2) is proper if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

The bank argues that injunctive relief is not available under TILA. The bank acknowledges that the undersigned judge has previously held that injunctive relief is available under TILA, but urges the Court to reconsider this holding. *See Hofstetter V. Chase Home. Fin., LLC*, 2011 WL 1225900 (N.D.Cal. Mar. 31, 2011).

This order declines to certify an injunctive class. However, this order concludes that certification of a declaratory relief class is appropriate under Rule 23(b)(2). Declaratory relief is appropriate because the bank has refused to act on grounds that apply generally to the class of borrowers with insurance funds on deposit. Here, the bank's own written procedures show that insurance proceeds are routinely omitted from payoff statements.

In her motion, plaintiff does not specifically request a class for declaratory relief. Nonetheless, declaratory and injunctive relief are closely related. This order concludes that certification is appropriate to allow the class to pursue declaratory relief as to their rights that payoff statements include a reference to any insurance proceeds that could be used to pay off the mortgage subject to any obligations to a contractor.

### 6. RULE 23(b)(3) PREDOMINANCE AND SUPERIORITY.

Certification under Rule 23(b)(3) is proper if "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The inquiry into predominance is similar to that of commonality but "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).

The bank again re-visits the issue of disputed funds, arguing that determining whether insurance proceeds are available to be applied to their loan balance is an individual question not susceptible to common proof. Not so. The simple inquiry will be whether or not the payoff

11

statement included the insurance proceeds.  Individualized issues are not likely to predominate at trial.

7.  **ASCERTAINABILITY.**

In addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite. *See, e.g.*, *Dietz v. Comcast Corp.*, No. C 06-06352 (WHA), 2007 WL 2015440, at *8 (N.D. Cal. July 11, 2007).

The bank repeats its arguments about the need for individualized proof.  Again, these arguments are unconvincing.  This order holds that the classes are ascertainable from the bank's records.  The bank's records can show who has received a written payoff statement that failed to include existing insurance proceeds.

The parties do not address the need for a cut-off date for a damages class.  A cut-off date is needed to make the class manageable and ascertainable.  This order finds it appropriate to set a cut-off date of June 23, 2015, the date of the filing of the complaint.

\*          \*          \*

The following class is **CERTIFIED** under Rule 23(b)(3) to pursue damages only:

> all borrowers with mortgages serviced and owned by Wells Fargo Bank, N.A. ("Wells Fargo") who, between June 23, 2014, and June 23, 2015, have received payoff statements which failed to disclose property insurance claim funds.

The following class is **CERTIFIED** under Rule 23(b)(2) to pursue declaratory relief only:

> all borrowers with mortgages serviced and owned by Wells Fargo wherein Wells Fargo is holding insurance proceeds on June 22, 2016.

**CONCLUSION**

For all of the above-stated reasons, plaintiff's motion for class certification is **GRANTED IN PART AND DENIED IN PART**.

The following class is **CERTIFIED** under Rule 23(b)(3) to pursue damages only:

> all borrowers with mortgages serviced and owned by Wells Fargo Bank, N.A. ("Wells Fargo") who, between June 23, 2014, and June 23, 2015, have received payoff statements which failed to disclose property insurance claim funds.

The following class is **CERTIFIED** under Rule 23(b)(2) to pursue declaratory relief only:

> all borrowers with mortgages serviced and owned by Wells Fargo wherein Wells Fargo is holding property insurance claim funds on June 22, 2016.


These class definitions shall apply for all purposes, including settlement. Latasha McLaughlin is **APPOINTED** as class representative of all plaintiff classes. Berman DeValerio and Wolf Popper LLP are hereby **APPOINTED** as class counsel, with Patricia I. Avery of Wolf Popper LLP to serve as lead counsel.

By **JULY 12, 2016**, the parties shall jointly submit a proposal for class notification, with the plan to distribute notice by **JULY 28, 2016**.

**IT IS SO ORDERED.**

Dated: June 22, 2016.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

13