Joseph J. Tabacco, Jr. (SBN 75484)
Kristin J. Moody (SBN 206326)
A. Chowning Poppler (SBN 272870)
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone:  (415) 433-3200
Facsimile:  (415) 433-6282
Email: jtabacco@bermandevalerio.com
         kmoody@bermandevalerio.com
         cpoppler@bermandevalerio.com

*Local Counsel for Plaintiff and the Class*

Patricia I. Avery (*pro hac vice*)
Matthew Insley-Pruitt (*pro hac vice*)
Adam J. Blander
**WOLF POPPER LLP**
845 Third Avenue, 12th Floor
New York, NY 10022
Telephone:  (212) 759-4600
Email: pavery@wolfpopper.com
         minsley-pruitt@wolfpopper.com
         ablander@wolfpopper.com

*Counsel for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| LATASHA McLAUGHLIN, on behalf of herself and all others similarly situated,<br><br>            Plaintiff,<br><br>    vs.<br><br>WELLS FARGO BANK, N.A., d/b/a WELLS FARGO HOME MORTGAGE,<br><br>            Defendant. | **CLASS ACTION**<br><br>No.: 3:15-cv-02904-WHA<br><br>**PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      December 1, 2016<br>Time:      8:00 a.m.<br>Place:     Courtroom 8 -19th Floor<br>Judge:    Honorable William Alsup |

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ............................................................................................... ii

NOTICE OF MOTION AND MOTION .............................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................. 2

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................... 2

BACKGROUND .................................................................................................................. 4

    The Pleadings, and Defendant's Motion to Dismiss ................................................... 4

    Discovery ...................................................................................................................... 4

    Class Certification ........................................................................................................ 5

    Pending Deadlines ........................................................................................................ 6

    Settlement Negotiations ............................................................................................... 6

    Settlement Terms ......................................................................................................... 6

ARGUMENT ........................................................................................................................ 8

I.      THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ............. 8

    A.    Criteria To Be Considered In Deciding Preliminary Approval .......................... 9

    B.    The Proposed Settlement Clearly Meets the Criteria For Preliminary
          Approval ........................................................................................................... 10

          1.    The Settlement Agreement Resulted from Arm's-Length
              Negotiations and Is Not the Product of Collusion ................................... 10

          2.    The Settlement Has No Obvious Deficiencies and Falls Within the
              Range For Approval ................................................................................. 13

          3.    The Settlement Satisfies This Court's Other Concerns Regarding
              Class Action Settlements ......................................................................... 15

    C.    The Proposed Notice Plan Meets All Requirements .......................................... 16

    D.    The Distribution Plan Should Be Preliminarily Approved ................................ 17

    E.    The Intended Request For Attorneys' Fees And Expenses ................................ 18

    F.    The Administrator .............................................................................................. 19

    G.    Schedule For Final Approval Proceedings ........................................................ 19

CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) ........................................................................ 8

*Boring v. Bed Bath & Beyond of Cal. Ltd. Liab. Co.*,
    No. 12-cv-05259-JST, 2013 WL 6145706 (N.D. Cal. Nov. 21, 2013) ........................... 18

*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996) ................................................................. 8, 11

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ....................................................................... 9

*Durrett v. Housing Auth. of Providence*,
    896 F.2d 600 (1st Cir. 1990) ........................................................................ 8

*Garner v. State Farm Mut. Auto. Ins.* Co.,
    No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ................ 18

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................. 8, 10

*In re Charles Schwab Corp. Sec. Litig.*,
    No. C 08-01510 WHA, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ............. 11, 13, 15

*In re Excess Value Ins. Coverage Litig.*,
    No. M-21-84, MDL 1339, 2004 WL 1724980 (S.D.N.Y. July 30, 2004) ..................... 11

*In re First Capital Holdings Corp. Fin. Prods Sec. Litig.*,
    MDL No. 901, 1992 WL 226321 (C.D. Cal. June 10, 1992) ........................................ 11

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ..................... 11

*In re General Motors Corp.*,
    55 F.3d 768 (3d. Cir. 1995) ........................................................................ 10

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ................................................................. 10

*In re Heritage Bond Litig.*,
    546 F.3d 667 (9th Cir. 2008) ......................................................................... 9

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ......................................................... 11

*In re Libor-based Fin. Instruments Antitrust Litig.*,
    No. 11 MDL 2262, 2014 WL 6851096 (S.D.N.Y. Dec. 1, 2014)......................................9

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000), *as amended* (June 19, 2000) ...........................10

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................9, 15

*In re Portal Software, Inc. Sec. Litig.*,
    No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .......... 10, 13, 15, 17

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ....................................................................15

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..........................................10, 11, 13

*In re Toys "R" Us Antitrust Litig.*,
    191 F.R.D. 347 (E.D.N.Y. 2000) .......................................................................11

In re Traffic Exec. Ass'n E. R.R.s,
    627 F.2d 631 (2d Cir.1980)................................................................................9

*Justice v. Nasser, Inc.*,
    No. CIV.A. 08-255-JBC, 2010 WL 3825455 (E.D. Ky. Sept. 23, 2010) ......................18

*Kakani v. Oracle Corp.*,
    No. C-06-06493-WHA, 2007 WL 1793774 (N.D. Cal. June 19, 2007).....................3, 9

*McLaughlin v. Wells Fargo Bank, N.A.*,
    No. C 15-02904 WHA, 2015 WL 10889993 (N.D. Cal. Oct. 29, 2015) ..........................4

*McLaughlin v. Wells Fargo Bank, N.A.*,
    No. C 15-02904 WHA, 2015 WL 10889994 (N.D. Cal. Nov. 24, 2015) ........................4

*McLaughlin v. Wells Fargo Bank, N.A.*,
    No. C 15-02904 WHA, 2016 WL 3418337 (N.D. Cal. June 22, 2016)...........................5

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................9

*Officers for Justice v. Civil Serv. Comm'n.*,
    688 F.2d 615 (9th Cir. 1982) ...........................................................................10

*Purtle v. Eldridge Auto Sales*,
    91 F.3d 797 (6th Cir. 1996) ............................................................................18

*Schwartz v. Dallas Cowboys Football Club Ltd.*,
    157 F. Supp. 2d 561 (E.D. Pa. 2001) ...............................................................10

*Spokeo, Inc. v. Robins,*
> 136 S. Ct. 1540 (2016) .................................................................................... 5

**Statutes**

15 U.S.C. § 1601 *et seq.* ...................................................................................... 7

15 U.S.C. § 1639g ................................................................................................ 4

15 U.S.C. § 1640(a)(2)(A)(i) ............................................................................ 13

15 U.S.C. § 1640(a)(4) ...................................................................................... 14

**Other Authorities**

*Manual for Complex Litigation, Fourth,* §13.14 (2004) .................................... 9

*Manual for Complex Litigation, Second* §30.44 (1985) .................................. 10

*Newberg on Class Actions* §11.25 (1992) ........................................................ 10

Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities*
> *Class Action Litigation: 2015 Full-Year Review*, NERA Economic
> Consulting, at 33 (Jan. 25, 2016) ............................................................ 13

**Rules and Regulations**

12 C.F.R. 1026.36(c)(3) ...................................................................................... 4

12 C.F.R. Part 1026 ............................................................................................ 7

Federal Rule of Civil Procedure 23 ...................................................... 8, 9, 16, 17

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on December 1, 2016, at 8:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8, Nineteenth Floor, before the Honorable William H. Alsup, Plaintiff Latasha McLaughlin ("Plaintiff") will move this Court for an Order: (1) preliminarily approving a proposed settlement of this action (the "Settlement"); (2) approving the form and manner of giving notice to the Class ("Notice"); and (3) scheduling a hearing before the Court to determine whether the proposed Settlement and Plaintiff's Fees and Costs Application and Service Award Application (as defined below) should be given final approval ("Preliminary Approval Order").  The proposed Settlement (1) creates a Damages Class Fund of eight hundred eighty thousand dollars ($880,000) (not to be diminished by any Fees and Costs Award or Service Award) to be paid by Defendant Wells Fargo Bank, N.A. ("Wells Fargo," the "Bank" or "Defendant") for the benefit of the Damages Class (as defined below), and (2) establishes a Practice Change whereby Defendant will revise its template payoff statement letter to include an insurance claim fund balance as well as explanatory notes for the benefit of the Declaratory Relief Class (as defined below).  If approved, the proposed Settlement would resolve the claim asserted in this Action against Defendant.

The grounds for this Motion are that: (1) the proposed Settlement is within the range of fairness, reasonableness, and adequacy so that Notice should be disseminated to members of the certified Damages Class and Declaratory Relief Class; and (2) the proposed Notice adequately apprises Class Members about the terms of the Settlement and their rights with respect to it.

This motion is based on Plaintiff's Memorandum of Points and Authorities submitted below, the accompanying Declaration of Patricia I. Avery ("Avery Decl." or "Avery Declaration"), the accompanying Class Settlement Agreement and Release (the "Settlement Agreement") dated October 19, 2016, and all other pleadings and matters of record.

Wherefore, the Plaintiff requests that the Court enter the Preliminary Approval Order.

**STATEMENT OF ISSUES TO BE DECIDED**

1.       Whether the proposed Settlement of this action is within the range of fairness, reasonableness and adequacy so as to warrant: (a) the Court's preliminary approval; (b) the dissemination of Notice of its terms to Class Members; and (c) setting a hearing date for final approval of the Settlement, and Applications for Fees and Costs and a Service Award.

2.       Whether the proposed Notice adequately apprises the Class Members about the terms of the Settlement and their rights with respect to it.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff respectfully submits this Memorandum of Points and Authorities in support of her motion for preliminary approval of the proposed Settlement, which establishes (1) an $880,000 Damages Class Fund benefitting the Damages Class; and (2) a practice change whereby Defendant will revise its template payoff statement letter to include a borrower's insurance claim fund balance as well as explanatory notes (the "Practice Change"), benefiting the Declaratory Relief Class, in consideration for resolving the above-captioned Action.[1]   A copy of the Settlement Agreement is attached as Exhibit 1 to the Avery Declaration.   Plaintiff seeks: (1) preliminary approval of the terms of the Settlement; (2) approval of the Notice of the proposed Settlement to be mailed to Class Members; and (3) entry of a Preliminary Approval Order setting a Final Approval Hearing and directing Notice to the Class.

The Court only needs to determine that the Settlement is sufficiently fair, reasonable, and adequate to grant Preliminary Approval and allow notice to be sent to Class Members at this time. However, Plaintiff believes that this is an excellent settlement because both of the classes certified by the Court are receiving substantial benefits from the Settlement.  Since TILA limits monetary damages to $1 million on a class-wide basis, the Damages Class Fund represents ***88%*** of the total recovery that the Damages Class could have received, without the risk and delay associated with trial and inevitable appeal by Defendant.  Each account held by Damages Class Members will receive more than $2,900.  Meanwhile, the Practice Changes will require Defendant to disclose

---

[1] Capitalized terms used in this Memorandum are defined in the Settlement Agreement.

insurance claim funds on all of its payoff statements going forward, which is a benefit that exceeds what could be achieved after a trial on behalf of the Declaratory Relief Class certified by the Court. Instead of simply recognizing that the funds should be disclosed, they actually will be disclosed. In fact, these Practice Changes benefit not only the Declaratory Relief Class (which is composed of the homeowners with loans serviced and owned by Wells Fargo on one particular point in time), but all homeowners with loans serviced by Wells Fargo—whether or not they are owned by Wells Fargo—on an ongoing basis. This can easily include thousands of homeowners each year.

In exchange for these benefits, the Settlement Agreement includes appropriate releases from the Class. The Damages Class and the Declaratory Relief Class are the same classes that this Court previously certified and they are releasing only the claims that were asserted in this Action. The Settlement does not release claims for actual damages for the absent class members, which were not certified by the Court. Nor does it release any damages claims for the Declaratory Relief Class Members who would not receive a payment from the Damages Class Fund.

The Damages Class Fund will only benefit the Damages Class Members. While Class Counsel intends to later file Plaintiff's Fees and Costs Application and Service Award Application, the Settlement does not depend on any fees being awarded, and such awards will be paid by Defendant directly and will not diminish the Damages Class Fund. Nor will any portion of the Damages Class fund revert to Defendant.

The Settlement also complies with the other safeguards articulated in "Notice Regarding Factors to be Evaluated For Any Proposed Class Settlement" (ECF No. 17; hereinafter "Notice on Class Settlement Factors") and *Kakani v. Oracle Corp.*, No. C-06-06493-WHA, 2007 WL 1793774 (N.D. Cal. June 19, 2007). The parties reached an agreement following arm's-length negotiations spearheaded by Magistrate Judge Ryu, and without any evidence of collusion. Damages Class Members can easily opt out and there is no burdensome claims process to receive a payment. Finally, the proposed Notice follows the procedures that this Court previously approved to send notice of class certification.

The Settlement is clearly within the range of fairness, reasonableness, and adequacy and therefore the Preliminary Approval Order should be entered so that Notice can be disseminated to the Class Members.

## BACKGROUND

**The Pleadings, and Defendant's Motion to Dismiss**

On June 23, 2015, Plaintiff Latasha McLaughlin filed this action against Defendant, her mortgage servicer, alleging it furnished her with a mortgage payoff statement that did not disclose the existence of $16,490.35 in held insurance claim funds and, as a result, failed to reflect an "accurate" statement of the total outstanding balance required to terminate the borrower's mortgage obligation, as required under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1639g, and its implementing regulation, Regulation Z, 12 C.F.R. 1026.36(c)(3).  ECF No. 1.  Plaintiff sought statutory damages of up to $1 million in the aggregate on behalf of the Damages Class (the maximum allowable under TILA), an order directing Wells Fargo to include insurance funds on payoff statements, and attorneys' fees and costs.  *Id.*

Defendant moved to dismiss the Complaint, principally arguing that it was not compelled under TILA to disclose claim funds on payoff statements.  This Court denied the motion on October 29, 2015, holding that TILA required such disclosure.  *McLaughlin v. Wells Fargo Bank, N.A.*, No. C 15-02904 WHA, 2015 WL 10889993 (N.D. Cal. Oct. 29, 2015).  Defendant then moved for leave to file a Motion for Reconsideration and moved to Certify an Immediate Appeal of that decision.  ECF Nos. 40, 43.  The Court rejected both motions.  *McLaughlin v. Wells Fargo Bank, N.A.*, No. C 15-02904 WHA, 2015 WL 10889994 (N.D. Cal. Nov. 24, 2015).

Defendant filed its answer, raising three affirmative defenses:  (1) that Plaintiff was not injured, and therefore lacked standing, (2) that Wells Fargo "acted in accordance with all applicable law," and (3) that it acted in good faith under TILA.  ECF No. 104.

**Discovery**

Plaintiff and Defendant sought merits-based and class discovery in this litigation.  Both parties served initial disclosures, document demands and interrogatories; produced material

1    responsive to those demands; and provided a witness for depositions, including Plaintiff Latasha

2    McLaughlin, and Jody Leo, Defendant's corporate representative.   Plaintiff also served requests

3    for admissions, to which Defendant responded.   Defendant issued a subpoena to Plaintiff's

4    contractor, who produced documents and was deposed.   The parties also followed up the

5    depositions and document production with meet and confer sessions concerning other discovery,

6    and produced additional materials.

7    **Class Certification**

8         On January 21, 2016, Plaintiff filed its motion for class certification ("Class Certification

9    Motion").   Defendant opposed the Class Certification Motion and also simultaneously filed both

10   a motion for summary judgment dismissing the complaint and a motion to stay proceedings given

11   the pendency of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).   The Court thereafter denied the

12   motion to stay, but postponed the hearing on the Class Certification Motion until after *Spokeo*

13   was decided, given the possibility that it might affect the construction of a potential class.   After

14   the Supreme Court rendered its decision in *Spokeo*, the parties submitted supplemental briefing

15   on its impact.

16        On June 22, 2016, the Court issued its Class Certification Order, in which it granted

17   Plaintiff's motion, in part, certifying two classes:   a Rule 23(b)(3) class of borrowers who received

18   payoff statements within one year prior to the filing of the complaint (the "Damages Class"), and

19   a Rule 23(b)(2) class of borrowers who had insurance claim funds held at the Bank on the date of

20   the Class Certification Order (the "Declaratory Relief Class").   *McLaughlin v. Wells Fargo Bank,*

21   *N.A.*, No. C 15-02904 WHA, 2016 WL 3418337 (N.D. Cal. June 22, 2016).   Defendant thereafter

22   filed a petition pursuant to Rule 23(f) of the Federal Rules of Civil Procedure for permission to

23   appeal the Class Certification Order and sought a stay in the District Court pending resolution of

24   that petition.   ECF No. 132.   On August 16, 2016, this Court denied Defendant's motion to stay

25   proceedings. ECF No. 138.   On September 22, 2016 the Ninth Circuit Court of Appeals denied

26   Defendant's petition.   Order Denying Petition, No. 16-80089 (9th Cir. Sep. 22, 2016).

27

28

**Pending Deadlines**

Defendant mailed Class Members a Notice of Pendency of Class Action on September 28, 2016. Both parties filed motions for summary judgment on October 6, 2016, which are set to be heard on November 10, 2016. ECF Nos. 145, 146. Trial is set for December 5, 2016. ECF No. 131.

**Settlement Negotiations**

Following Class Certification, the parties engaged in negotiations in an attempt to resolve this Action. On August 5, 2016, the parties participated in an all-day settlement conference with Magistrate Judge Ryu. Settlement discussions continued for several weeks thereafter. Throughout the negotiations, the parties were attentive of this Court's Notice on Class Settlement Factors. The parties did not negotiate the terms of a fee agreement. On or about October 17, 2016, the Parties reached final agreement on the material terms of the Settlement. On October 19, 2016, the parties executed the Settlement Agreement.

**Settlement Terms**

The Settlement provides for substantial monetary relief to those who received payoff statements that omitted claim funds and Wells Fargo will, going forward, disclose claim funds on payoff statements for all borrowers with such funds.

*Monetary Relief to the Damages Class*

Wells Fargo will establish a Damages Class Fund in the amount of $880,000, representing *88%* of total available recovery under TILA. Damages Class Members will receive settlement checks representing a pro rata share, on a per account basis, of the Damages Class Fund ("The Pro Rata Plan of Allocation"). In other words, accounts with two named borrowers (e.g., spouses) will share in a single pro rata share of the Damages Class Fund.

*Practice Change*

Wells Fargo will revise its template payoff statement letter to disclose property insurance funds held by it for all residential mortgage loans that it services. Specifically, the letters will add the following language:

- Under the Total Amount Due calculation:

  > Restricted Escrow Balance: $_____
  > As of the date of this statement, funds received from a property insurance claim are being held in restricted escrow. All or some of such funds can be applied to the total amount due, if not used to pay for repairs to the property, including claims of third parties such as contractors. If you have questions about the application of these funds, please call us at [PHONE].

- After the statement "we may adjust figures in this statement, if prior to the payoff date":

  > We make disbursements from Restricted Escrow to pay for repairs to the property.

Settlement Agreement, at ¶ 4.3.

### *The Release*

In consideration for the above relief, Class Members will release their claims for statutory damages (but not actual damages) under TILA arising from Defendant's failure to disclose claim funds on its payoff statements, as alleged in Plaintiff's Complaint.[2] The Settlement defines "Released Claims" as follows:

> any and all actions, causes of action, obligations, costs, expenses, damages, losses, claims, liabilities, and demands, of whatever character that were asserted in this Action, to wit, violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* and Regulation Z, 12 C.F.R. Part 1026 for the failure of Wells Fargo to disclose insurance claim fund balances in payoff statements, except that any Class Member's claims for actual damages as a result of such violations are expressly excluded from this release.

Settlement Agreement, at ¶ 1.20. Only those Class Members who do not exclude themselves and whose Notice is not returned undeliverable are releasing claims.[3]

---

[2] Plaintiff herself has stipulated to voluntarily dismiss without prejudice her individual claim for actual damages asserted in the Complaint. *See* Settlement Agreement, at ¶ 3.2.

[3] "Releasing Persons" is defined in Settlement Agreement, at ¶ 1.18 as:

> Plaintiff and each Class Member, on behalf of themselves and their agents, administrators, servants, employees, representatives, assigns, heirs, executors, trustees, joint venturers, partners, successors, predecessors and attorneys, and each of them, excluding: (i) all Class Members whose notice is returned as undeliverable and who cannot be located with reasonable diligence; and (ii) all Damages Class Members who timely request exclusion from the Class pursuant to Section 5.4 of this Agreement.

1  *Fee and Expense Application*

2      The Settlement Agreement also contemplates that Class Counsel will move the Court for

3  an award of reasonable attorneys' fees and expenses ("Fees and Costs Application") incurred in

4  the Action, which Defendant may oppose.[4]  Class Counsel may also move the Court to award

5  Plaintiff a modest $5,000 payment for her services in this litigation, including reviewing the

6  complaint and other documents, producing documents in response to Defendant's discovery

7  requests, sitting for a deposition, and overseeing Class Counsel's prosecution of the case and

8  settlement negotiations ("Service Award Application").   The Settlement, however, is not

9  conditioned on the outcome of any such application.  Moreover, attorneys' fees and expenses and

10  any service award would be paid separately by Wells Fargo, and would not diminish the Damages

11  Class Fund.  *See* Settlement Agreement, ¶ 4.6 ("<u>No Diminishment of Damages Class Fund</u>. Any

12  attorneys' fees and costs award or service award shall be paid by Wells Fargo directly, and shall

13  not, in any manner, diminish the Damages Class Fund.").

14                                            **ARGUMENT**

15  **I.      THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT**

16      Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any

17  compromise of claims brought on a class basis.  Approval of a proposed settlement is a matter

18  within the broad authority of the district court.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

19  1025 (9th Cir. 1998); *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1044

20  (1st Cir. 1996) ("Great deference is given to the trial court [regarding its decision to approve a

21  class action settlement].").  The district court's decision, however, is "restrained by 'the clear

22  policy in favor of encouraging settlements.'"  *Durrett v. Housing Auth. of Providence*, 896 F.2d

23  600, 604 (1st Cir. 1990) (citation omitted).  Indeed, "there is a strong judicial policy that favors

24  settlements, particularly where complex class action litigation is concerned."  *Allen v. Bedolla*,

25  787 F.3d 1218, 1223 (9th Cir. 2015) (citation omitted).

26

27  ─────────────────
   [4] The Notice informs Class Members that Class Counsel will apply for no more than $1.95
28  million in fees and no more than $45,000 in costs.

Preliminary approval of a proposed settlement is the first in a two-step process required before a class action may be settled. *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).   "[T]he Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Id.*; *see also Manual for Complex Litigation, Fourth*, §13.14 (2004). Preliminary approval permits notice to be given to class members of a hearing on final settlement approval, at which class members and the settling parties may be heard with respect to final approval.

## A.    Criteria To Be Considered In Deciding Preliminary Approval

"A district court may approve a proposed settlement in a class action only if the compromise is fundamentally fair, adequate, and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008) (citing Fed. R. Civ. P. 23(e)); *accord Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("Although Rule 23(e) is silent respecting the standard by which a proposed settlement is to be evaluated, the 'universally applied standard is whether the settlement is fundamentally fair, adequate, and reasonable.'") (citations omitted). Preliminary approval, however, is "not tantamount to a finding that [a proposed] settlement is fair and reasonable." *In re Traffic Exec. Ass'n E. R.R.s*, 627 F.2d 631, 634 (2d Cir. 1980).   At this stage, the district court "need only decide whether the terms of the Proposed Settlement are at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard." *In re Libor-based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262, 2014 WL 6851096, at *2 (S.D.N.Y. Dec. 1, 2014) (internal citations and quotation marks omitted).  *See also Kakani*, 2007 WL 1793774, at *6 (movant for preliminary settlement approval under Rule 23 must pass "threshold of plausibility"); *In re Nasdaq Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (preliminary approval should be granted and notice of the proposed settlement given to the class if there are no obvious deficiencies in the proposed settlements).

In determining whether a proposed settlement should be preliminarily approved, the court considers both procedural and substantive factors:

> "[T]he preliminary determination establishes an initial presumption of fairness * * *." *In re General Motors Corp.*, 55 F.3d 768, 784 (3d. Cir. 1995) . . . . As noted in the *Manual for Complex Litigation, Second*, "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing * * *." *Manual for Complex Litigation, Second* §30.44 (1985). In addition, '[t]he court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid.' *Newberg on Class Actions* §11.25 (1992)."

*In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *5 (N.D. Cal. June 30, 2007) (quoting *Schwartz v. Dallas Cowboys Football Club Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)).

## B.   The Proposed Settlement Clearly Meets the Criteria For Preliminary Approval

Under these criteria, Plaintiff respectfully submits that preliminary approval of the proposed Settlement should be granted and dissemination of the Notice should be ordered.

### 1.   The Settlement Agreement Resulted from Arm's-Length Negotiations and Is Not the Product of Collusion

The Court should look to whether the proposed settlement appears to be the product of collusion among the negotiating parties. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000). In applying this factor, courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004); *see also Hanlon*, 150 F.3d at 1027 (courts are deferential "to the private consensual decisions of the parties.") (citing *Officers for Justice v. Civil Serv. Comm'n.*, 688 F.2d 615, 625 (9th Cir. 1982)).

1    Indeed, when a settlement is negotiated at arm's-length by experienced counsel, there is a

2    presumption that it is fair and reasonable.  *See Tableware*, 484 F. Supp. 2d at 1080; *City P'ship*,

3    100 F.3d at 1043 ("When sufficient discovery has been provided and the parties have bargained

4    at arm's-length, there is a presumption in favor of the settlement."); *In re First Capital Holdings*

5    *Corp. Fin. Prods Sec. Litig.*, MDL No. 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992)

6    (finding that belief of counsel that the proposed settlement represented the most beneficial result

7    for the class to be a compelling factor in approving settlement); *In re Excess Value Ins. Coverage*

8    *Litig.*, No. M-21-84, MDL 1339, 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004) ("Where

9    'the Court finds that the Settlement is the product of arm's length negotiations conducted by

10   experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a

11   presumption of fairness.'") (citation omitted).

12   Courts may also consider whether the settlement was reached with the assistance of an

13   experienced magistrate judge or other mediator.  *See, e.g.*, *In re Toys "R" Us Antitrust Litig.*,

14   191 F.R.D. 347, 352 (E.D.N.Y. 2000) ("[m]ost significantly, the settlements were reached only

15   after arduous settlement discussions conducted in a good faith, non-collusive manner, over a

16   lengthy period of time, and with the assistance of a highly experienced neutral mediator"); *In re*

17   *Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007); *In re Flag Telecom*

18   *Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *14 (S.D.N.Y. Nov.

19   8, 2010) ("The presumption in favor of the negotiated settlement in this case is strengthened by

20   the fact that settlement was reached in an extended mediation supervised by [a former judge]").

21   The proposed Settlement here is the product of extensive, arm's-length negotiations,

22   which included an all-day mediation session and continued telephonic negotiations with

23   Magistrate Judge Donna Ryu, which commenced only after the parties had the benefit of the

24   Court's Motion to Dismiss and Class Certification rulings.  Counsel were thus able to make

25   informed assessments regarding the merits of their claims and defenses.  *Cf. In re Charles Schwab*

26   *Corp. Sec. Litig.*, No. C 08-01510 WHA, 2011 WL 1481424, at *5 (N.D. Cal. Apr. 19, 2011)

27   ("the class settlements were reached on the eve of trial when class counsel had completed

28

1   discovery and had conducted extensive motion practice and were thus well aware of the issues

2   and attendant risks involved in going to trial as well as the adequacy of the amount of the class

3   settlement."). The negotiations were informed by the knowledge Class Counsel gained through

4   discovery, as well as the rulings in this litigation. Based on their familiarity with the factual and

5   legal issues, and armed with a thorough understanding of the strength and weaknesses of the

6   claims at issue, the parties were able to negotiate a fair settlement, taking into account the costs

7   and risks of continued litigation.   The negotiations were at all times hard-fought and have

8   produced a result that the settling parties believe to be in their respective interests.

9         Class Counsel, who have a great deal of experience in the prosecution and resolution of

10   consumer class actions, have carefully evaluated the merits of their case and the proposed

11   Settlement. Class Counsel believe that they have a strong case and that there is sufficient evidence

12   to proceed to the jury, and to prevail before a jury on these claims.   Class Counsel, however,

13   recognize that there exist challenges in this litigation that could pose significant risks regarding

14   their ability to prevail and the scope of damages if the case were to proceed to trial, and thereafter

15   the inevitable appeal before the Ninth Circuit.[5]  And even if Plaintiff emerged victorious after

16   appeal, there can be no doubt that the appeal would be lengthy, during the pendency of which

17   Defendant would continue to furnish inaccurate payoff statements in violation of TILA.[6]  Class

18   Counsel understands the risks of litigation and the fact that, even where a plaintiff's case appears

---

[5] Defendant's unsuccessful 23(f) Petition, ECF. No. 133, Exhibit A, articulates what undoubtedly would form the basis of its appeal, should this Court render final judgment in Plaintiff's and the Class's favor.  ***First***, Defendant believes that this Court erroneously interpreted TILA's payoff statement provision, and that the disclosure of claim funds is not required.  ***Second***, Defendant argues that Plaintiff cannot demonstrate that she was harmed by Defendant's payoff statement and thus lacked Article III standing to challenge it, and even if she did possess standing, a similar finding was required for all absent class members.  ***Third***, Defendant contends that TILA does not provide for equitable relief (either injunctive or declaratory).  ***Fourth***, Defendant argues that claim funds are often owed to contractors, and thus cannot be used to pay down mortgage debt and, in any event, inquiry into the claims made on each class member's claim funds would preclude a commonality finding and the certification of any class.   Obviously, Plaintiff vigorously disputes these four contentions.  However, Plaintiff recognizes that a Ninth Circuit decision accepting any of them would likely eviscerate part, if not all, of the recovery secured in this Settlement.

[6] Indeed, Defendant disputes the statements are inaccurate or violate TILA. *See, e.g.,* Motion to Dismiss. ECF No. 20.

---

strong, there is no guarantee against a defense verdict.  *Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, *5 (approving settlement; "prosecuting these claims through trial and subsequent appeals would have involved significant risk, expense, and delay to any potential recovery").  As such, Class Counsel believes the Settlement is fair, reasonable and adequate, and in the best interest of the Class.  *See* Avery Decl. ¶ 2.

### 2.    The Settlement Has No Obvious Deficiencies and Falls Within the Range For Approval

When evaluating the adequacy of a settlement, courts balance a plaintiff's expected recovery against the value of the offer.  *Tableware*, 484 F. Supp. 2d at 1080; *Portal Software*, 2007 WL 1991529, at *6.  This case involves a range of disputed issues including constitutional standing, interpretation of TILA's requirements regarding the disclosure of contingent funds (a question of first impression), availability of injunctive relief under TILA, commonality burdens under Rule 23, and damages. While Plaintiff believes that the Class has meritorious claims, Defendant denies, and continues to deny, each and all of the claims and contentions asserted by Plaintiff.

Further, the $880,000 recovery under the proposed Settlement constitutes ***88% of the maximum available monetary recovery under TILA***, assuming Plaintiff and the Class prevailed in this Action.  For any stage of the litigation, this recovery is an exceptional result.  *See, e.g.*, Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review*, NERA Economic Consulting, at 33 (Jan. 25, 2016) (reviewing securities class actions between 1996 and 2015, finding that the median settlement value recovered only 18.9% for cases with investor damages below $20 million).  TILA also caps individual claims at $4,000 for each person.  15 U.S.C. § 1640(a)(2)(A)(i).  If each of the 339 accounts potentially in the Damages Class is in fact a Class Member and participates in the Settlement, then Damages Class Members will receive checks for $2,949; as addresses are returned undeliverable or

individuals exclude themselves, this figure will increase.  This is obviously a material recovery for homeowners.[7]

The Practice Change secured by the Settlement is also exceptional and provides the Declaratory Relief Class with ***more*** than could have been achieved through further litigation. Plaintiff moved to certify an injunctive class under Rule 23(b)(2) in order to compel Defendant to disclose claim funds on its payoff statements, but instead the Court certified the Declaratory Relief Class, by which members might be entitled to a declaration that Defendant's conduct violated TILA.  The Practice Change compels Defendant to list claim funds, giving teeth to the declaratory relief available to Plaintiff and the Class assuming a favorable result at trial. Practically, Wells Fargo borrowers are far better off with this Settlement (which compels action from Defendant) than from a declaration (which may or may not spur Defendant into action).[8]

The Declaratory Relief Class also only includes homeowners who had insurance funds at the Bank on a specific date and whose mortgage was also owned by Wells Fargo.  However, the Practice Change benefits many more borrowers, since it requires the Bank to disclose this information on an ongoing basis.  The Practice Change also applies broadly to "all residential mortgage loans that it services," Settlement Agreement ¶ 4.3, thereby benefiting borrowers whose loan is only serviced by Wells Fargo and might be owned by another institution.

The Damages Class Fund and Practice Change provided by the Settlement constitutes an excellent result, particularly considering the risk of no recovery if Plaintiff and the Class were unsuccessful through trial and appeal.

---

[7]TILA identifies the factors a court utilizes in fixing a damages award. *See* 15 U.S.C. § 1640(a)(4) ("In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.")

[8] Notably, Defendant has not argued in Court filings that it has already altered its practices in response to this Court's ruling last October that the payoff letters must disclose insurance claim funds.

### 3. The Settlement Satisfies This Court's Other Concerns Regarding Class Action Settlements

The Parties made every effort to ensure that the negotiations and the Settlement Agreement complied with the factors listed in this Court's Notice on Class Settlement Factors as well as the Procedural Guidance for Class Action Settlements in this District (the "Procedural Guidance"). Most importantly, the Settlement was reached after the Class Certification Order, with the same plaintiff on behalf of the same classes as certified by the Court.[9] Class Counsel and Plaintiff therefore have made a thorough investigation into the facts and circumstances relevant to the claims alleged in the Complaint.

The Settlement "does not improperly grant preferential treatment to the [Plaintiff] or segments of the class." *Portal Software*, 2007 WL 1991529, at *5. The Settlement creates an $880,000 Damages Class Fund, in which Plaintiff's recovery will be determined according to the same formula as the recoveries of other Class Members. *See NASDAQ*, 176 F.R.D. at 102 (settlement may be approved preliminarily where it "does not improperly grant preferential treatment to class representatives or segments of the class"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (preliminary approval is appropriate where "preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives . . . .") (citation omitted).

While the Settlement anticipates for the possibility that Class Counsel will apply for a $5,000 service award for Plaintiff, the Settlement is in no way conditioned on receiving this award nor would the award be paid out of the Damages Class Fund or in any way diminish the amount of the pro rata payment to each member of the Damages Class. Settlement Agreement, §4.6.

Here, "the scope of the class settlement release of claims is reasonable and sufficiently limited." *Charles Schwab Corp. Secs. Litig.*, 2011 WL 1481424, at *6. Consistent with the Notice

---

[9] The Settlement Agreement amends the definition in the Class Certification Order only slightly, by excluding the officers and directors of Wells Fargo since June 23, 2014, when the Damages Class period began. While the Parties do not believe that any officers or directors are actual Class Members, the Parties believe that under the circumstances of the case it would be appropriate to exclude such persons from the Class.

on Class Settlement Factors, the Settlement releases only the TILA claim asserted in this Action arising from Defendant's failure to disclose claim funds on payoff statements. *Supra* at 7:9-20. Plaintiff only sought statutory damages on behalf of the Class in the Class Certification Motion, which were the only damages certified by the Court.  In order to ensure that actual damages are not included in the release, the Settlement Agreement states that "any Class Member's claims for actual damages as a result of such violations are expressly excluded from this release." *Id.*[10] Class Counsel also considered that there may be damages claims available to members of the Declaratory Relief Class who received a payoff statement that did not disclose the existence of insurance funds after the cutoff for the Damages Class.  In order to ensure that these claims are not released, the Settlement Agreement states that "Declaratory Relief Class Members who are not Damages Class Members are not releasing claims for damages, if any."   Settlement Agreement, ¶ 1.20.  The Settlement does not release claims that "could have been brought" nor does it release claims for those members whose Notices are returned as undeliverable.

Class Counsel have had an opportunity to thoroughly examine the issues raised in the Complaint and to examine the relative strengths and weaknesses of the claims and defenses.  In light of the above considerations, the proposed Settlement is, as a whole, reasonable and within the range of possible approval.  The Court should therefore grant preliminary approval of the Settlement and direct that Notice of it be given to the Class.

### C.    The Proposed Notice Plan Meets All Requirements

Plaintiff also requests that the Court approve the form and content of the proposed Notice (attached as Exhibit A to the Settlement Agreement).

The proposed form of Notice fully complies with the requirements of Rule 23, the Procedural Guidance, and due process, and is substantially similar to the prior notice of class certification approved by the Court.  The Notice apprises class members of the nature of the Action, the definition of the Class, the class claims and issues, and the claims that will be released.

---

[10] The Parties have stipulated that Plaintiff's claims for actual damages will be voluntarily dismissed without prejudice.  A stipulation to this effect will be filed with the Court.

1    Additionally, the Notice: (1) describes the Settlement and pro-rata potential recovery for each

2    account; (2) explains that the parties disagreed regarding whether any damages were recoverable

3    even if Plaintiff prevailed on her claims and includes a brief description of why the parties are

4    proposing the Settlement; (3) includes a brief description of the maximum amount of fees and

5    expenses that Class Counsel will seek, as well as the request for the Service Award; (4) advises

6    of the binding effect of a Judgment on Class Members; (5) advises that a Class Member may enter

7    an appearance through counsel if desired; (6) states that the Court will exclude from the Class any

8    Class Member who requests exclusion (and sets forth the procedures and deadline for doing so);

9    (7) describes how to object to the proposed Settlement and/or requested attorneys' fees, using the

10   language suggested in the Procedural Guidance; (8) describes how payment is effectuated;

11   (9) provides the names, addresses and telephone numbers of representatives of the Administrator

12   (including the settlement website) and Class Counsel who will be available to answer questions

13   from Class Members; (10) includes instructions on how to access the case docket via PACER or

14   in person at the court; (11) states the date, time and location of the Final Approval Hearing and

15   that the date may change without further notice to the Class and advises Class Members to check

16   the settlement website or the Court's PACER site to confirm that the date has not been changed;

17   and (12) includes the deadlines for objecting to the settlement, the Fees and Costs Application or

18   the Service Award Application.  These disclosures are thorough and should be approved.

19          Notice by first-class mail satisfies the requirements of due process and Rule 23.  *See Portal*

20   *Software*, 2007 WL 1991529, at *7.

21          **D.    The Distribution Plan Should Be Preliminarily Approved**

22          The Settlement Agreement provides that the monies in the Damages Class Fund will be

23   divided pro rata, on a per account basis, among all the homeowners in the Damages Class.  In

24   other words, accounts with two (or more) named borrowers will share in a single pro rata share

25   of the Damages Class Fund.  The settlement checks are to be cashed within 120 days of the date

26   of the check.  If any distribution checks are not cashed within 90 days of being mailed, the

27   Administrator and/or Class Counsel may attempt to notify the Damages Class Member and

28

remind such borrower(s) to cash their check(s).  Should any balance remain in the Damages Class Fund after such distribution, the balance is to be distributed to the Eviction Defense Project of the San Francisco Bar Association, Justice and Diversity Center, a non-sectarian §501(c)(3) charitable organization.  *See Boring v. Bed Bath & Beyond of Cal. Ltd. Liab. Co.*, No. 12-cv-05259-JST, 2013 WL 6145706, at *7 (N.D. Cal. Nov. 21, 2013) ("An award to a legal services organization is often an appropriate use of *cy pres* funds.").  *See, e.g., Garner v. State Farm Mut. Auto. Ins*. Co., No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *5 (N.D. Cal. Apr. 22, 2010) (distributing uncashed class payments to two legal services organizations).  Under no circumstances will any portion of the Damages Fund revert to Defendant.  Settlement Agreement, ¶ 4.2.  *Cf.* Notice on Class Settlement Factors (reversion "is a red flag").

### E.     The Intended Request For Attorneys' Fees And Expenses

Class Counsel intends to request an attorney fee award no greater than $1.95 million.  *See* Avery Decl. ¶ 4.  Class Counsel's lodestar is approximately $1.5 million.  *Id*.  The fee request represents a modest multiplier of lodestar.  *Id*.  As discussed *supra* at 3:15-19, 8:1-13, any fees and expenses will be paid by Wells Fargo directly, and will not in any way diminish the Damages Class Fund.

The anticipated fee request is justified given the Practice Change and Damages Class Fund secured by the Settlement, in which, as discussed *supra* in § I.B.2., Class Members will receive nearly all of the available relief in this litigation.[11]  In fact, the Practices Changes exceed what would be available through trial.  Class Counsel's anticipated motion will include a full description of the work performed by Class Counsel in accordance with the Procedural Guidance.

---

[11] The maximum recovery for this class action under TILA is $1 million.  Thus, Plaintiff recovered 88% of the maximum amount of damages.  The fact that the anticipated fee requested will likely be greater than the Damages Class Fund (one facet of the relief secured in the Settlement) is not unusual in actions under TILA and other fee-shifting statutes. *See, e.g.*, *Purtle v. Eldridge Auto Sales,* 91 F.3d 797, 802 (6th Cir. 1996) (attorney's fees awarded under TILA not limited by amount of recovery); *Justice v. Nasser, Inc*., No. CIV.A. 08-255-JBC, 2010 WL 3825455, at *2 (E.D. Ky. Sept. 23, 2010) (same).

1   Furthermore, Class Counsel intends to request reimbursement of its costs and expenses

2   not to exceed $45,000.  *See* Avery Decl. ¶ 5.

3   The Settlement Agreement specifically states that its effect is not conditioned on the

4   amount of any attorneys' fees and costs awarded.   *See* ¶ 4.4 ("Notwithstanding any other

5   provision of this Agreement, this Agreement and the finality of the Effective Date is not

6   conditioned on the Court's approval of any attorneys' fees and costs sought by Class Counsel and

7   a reduction by the Court or modification by an appellate court of the fees and costs to Class

8   Counsel will not affect any of the Parties' rights and obligations under this Agreement.").  This

9   is consistent with the Notice on Class Settlement Factors.

### F.   The Administrator

10

11   Plaintiff also requests that the Court approve the appointment of Garden City Group, LLC

12   ("GCG") as Administrator.  GCG was retained by Wells Fargo to distribute the Notice to Class

13   Members and to distribute the Settlement monies to Damages Class Members.   GCG has

14   extensive relevant experience and is a nationally-recognized notice and administration firm.[12]

15   The Claims Administrator will mail the Notice to all Class Members.  GCG's expenses will be

16   paid entirely by Wells Fargo and will not diminish the Damages Class Fund in any way.

17   Settlement Agreement, at ¶ 7.1.

### G.   Schedule For Final Approval Proceedings

18

19   As set forth in the Settlement Agreement, the following is the proposed schedule for the

20   remaining deadlines in the preliminary and final approval proceedings:

21

| ACTION | DEADLINE |
| --- | --- |
| Defendant to Provide Notices and Materials as Required by CAFA, 28 U.S.C. § 1715 (b) | October 31, 2016 |
| Preliminary Approval Hearing | December 1, 2016 |

[12] *See* http://www.gardencitygroup.com/.

| ACTION | DEADLINE |
| --- | --- |
| Deadline for Mailing Notice | 21 days after entry of Preliminary Approval Order |
| Deadline for filing Motion for Final Approval and for Award of  Attorneys' Fees and Costs | 70 days after entry of Preliminary Approval Order |
| Filing Deadline for Objections | 112 days after entry of Preliminary Approval Order |
| Deadline for Damages Class Members to Opt-Out | 112 days after entry of Preliminary Approval Order |
| Party Responses to Objections | 154 days after entry of Preliminary Approval Order |
| Proof of Notice Compliance | 154 days after entry of Preliminary Approval Order |
| Final Approval Hearing | 168 days after entry of Preliminary Approval Order |

## CONCLUSION

Accordingly, based on the Settlement Agreement, the attachments to the Settlement Agreement, this memorandum of law and the prior proceedings in this matter, Plaintiff, with the consent of Defendant, respectfully requests that the Court grant preliminary approval of the proposed Settlement, approve the Notice, and enter the proposed Preliminary Approval Order submitted herewith.

Date: October 21, 2016         **WOLF POPPER LLP**

By:   _/s/ Patricia I. Avery_
              Patricia I. Avery (*pro hac vice*)

Matthew Insley-Pruitt (*pro hac vice*)
Adam J. Blander
845 Third Avenue, 12th Floor
New York, NY 10022
Telephone:  (212) 759-4600
Email: pavery@wolfpopper.com
              minsley-pruitt@wolfpopper.com
              ablander@wolfpopper.com

*Counsel for Plaintiff and the Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joseph J. Tabacco, Jr. (SBN 75484)
Kristin J. Moody (SBN 206326)
A. Chowning Poppler (SBN 272870)
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone:  (415) 433-3200
Facsimile:  (415) 433-6282
Email: jtabacco@bermandevalerio.com
kmoody@bermandevalerio.com
cpoppler@bermandevalerio.com

*Local Counsel for Plaintiff and the Class*