IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATASHA MCLAUGHLIN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK N.A., d/b/a WELLS FARGO HOME MORTGAGE,<br><br>Defendant. | No. C 15-02904 WHA<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

## INTRODUCTION

In this TILA class action, plaintiff moves for preliminary approval of a proposed settlement agreement (Dkt. No. 151). The motion is **GRANTED**.

## STATEMENT

The background of this case has been set forth in detail in a prior order (Dkt. No. 123) and does not need to be repeated here. In brief, plaintiff Latasha McLaughlin asserts class claims against defendant Wells Fargo Bank for violations of the Truth in Lending Act. Plaintiff alleges defendant failed to provide an "accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specific date" based on the "best information available," as required by TILA, because defendant's payoff statements did not include insurance proceeds held by defendant in restricted escrow accounts (Dkt. Nos. 123 at 1–4, 151 at 4).

Previous orders held that TILA required payoff statements to reflect insurance proceeds (Dkt. No. 36), denied defendant's subsequent motion for reconsideration and certificate of immediate appealability of the aforementioned decision (Dkt. No. 46), and certified two classes of plaintiff borrowers (Dkt. No. 123). One class of borrowers who, within one year prior to the filing of the complaint, received payoff statements that failed to disclose insurance proceeds was certified to pursue damages. Another class of borrowers for whom defendant held insurance proceeds on the date of the class certification order was certified to pursue declaratory relief (*id.* at 12–13). Defendant's petition for permission to appeal the class certification order was denied (Dkt. No. 149).

**ANALYSIS**

Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. Apr. 12, 2007) (Chief Judge Vaughn Walker). The proposed settlement agreement satisfies these requirements.

1. **BENEFIT TO CLASS MEMBERS.**

The proposed settlement agreement establishes a damages class fund of $880,000.00, to be distributed evenly among accounts held by class members (Dkt. No. 151-1 Exh. 1 § 1.9). Since TILA caps statutory damages in class actions at one million dollars, the damages class fund represents 88 percent of the best possible outcome the damages class could have obtained through litigation (Dkt. No. 151 at 13). *See* 15 U.S.C. 1640(a)(2)(B). The difference between the maximum possible recovery and the damages class fund accounts for avoided risks of litigation, including the risk that a jury might return a defense verdict and the risks and costs of an "inevitable appeal" even if the class plaintiff prevailed at trial. Given that this proposed settlement agreement comes after over a year of litigation, discovery, and motion practice, both sides have had ample opportunity to carefully assess and weigh the relative strengths and

weaknesses of their legal positions. The discounted payout seems to reflect those considerations.

In addition to monetary benefits to the class, the proposed settlement agreement compels defendant to change its business practices to address the issues raised in this lawsuit. Specifically, the agreement provides that defendant "will revise the templates used to generate payoff statement letters for all residential mortgage loans that it services to include . . . language" disclosing insurance proceeds held by defendant (Dkt. No. 151-1 Exh. 1 § 4.3). This corrective measure, combined with the monetary payout to the damages class, falls within the range of possible approval.

### 2. SCOPE OF THE RELEASE.

The proposed settlement agreement defines the classes using the exact definitions set forth in the class certification order (*compare* Dkt. No. 123 at 12–13 *with* Dkt. No. 151-1 Exh. 1 §§ 1.8, 1.10). Moreover, the proposed settlement agreement releases only claims actually asserted in this action. Importantly, the release "expressly exclude[s]" any class member's "claims for actual damages as a result of" defendant's failure to disclose insurance proceeds in payoff statements (*id.* at § 1.20). This accounts for TILA's provision for actual damages, in addition to statutory damages as described above. *See* 15 U.S.C. 1640(a)(1). The scope of the class definition and release in the proposed settlement agreement is appropriately tailored and thus falls within the range of possible approval.

### 3. ATTORNEYS' FEES AND INCENTIVE AWARD.

Plaintiff's motion indicates that "Class Counsel intends to request an attorney fee award no greater than $1.95 million" (Dkt. No. 151 at 18). TILA provides for "a reasonable attorney's fee as determined by the court" in "any successful action to enforce . . . liability." 15 U.S.C. 1640(a)(3). This order does not determine what a "reasonable" fee would be in this situation, but notes that any attorneys' fees awarded would not diminish the damages class fund (Dkt. No. 151-1 Exh. 1 § 4.6). The proposed settlement agreement does not provide for a specific attorneys' fees award and notes that defendant "may oppose any such motion" for attorneys' fees (*id.* at § 4.4). Additionally, "Plaintiff may apply to the Court for a service award of up to

1 Five Thousand Dollars ($5,000) to be paid by Wells Fargo for her services as the Class
2 Representative in the Action" (Dkt. No. 151-1 Exh. 1 § 4.5).  While the prospect of these
3 forthcoming requests does not prevent preliminary approval at this stage, the parties are advised
4 that the requested amounts are subject to reduction at the final approval stage.

5 In particular, and as cautioned in the Court's Notice Regarding Factors to be Evaluated
6 for Any Proposed Class Settlement, the request for an incentive award to the class plaintiff is a
7 "red flag" (Dkt. No. 17 at 5).  Plaintiff notes that "the Settlement is in no way conditioned on
8 receiving this award nor would the award be paid out of the Damages Class Fund or in any way
9 diminish the amount of the pro rata payment to each member of the Damages Class" (Dkt. Nos.
10 151 at 15, 151-1 Exh. 1 § 4.6).  These factors, while helpful, do not automatically eliminate the
11 risk that the proposed award might make a flawed or inadequate settlement more "palatable" to
12 the class plaintiff (Dkt. No. 17 at 5).  Nonetheless, because the proposed settlement agreement
13 does not provide for an automatic incentive award, no request for such an award has been made
14 yet, and the proposed settlement agreement is not contingent on the outcome of any such
15 request, preliminary approval remains appropriate.

16 **4.    OTHER CONSIDERATIONS.**

17 Several other factors weigh in favor of granting preliminary approval.  For example, the
18 parties participated in "an all-day mediation session and continued telephonic negotiations with
19 Magistrate Judge Donna Ryu, which commenced only after the parties had the benefit of the
20 Court's Motion to Dismiss and Class Certification rulings," in reaching the proposed settlement
21 agreement (Dkt. No. 151 at 11).  This background is relevant to, albeit not dispositive of, the
22 question of whether the agreement appears to be "the product of serious, informed, non-
23 collusive negotiations."  Moreover, the proposed settlement agreement does not require class
24 members to participate in a claims process in order to claim their share of the damages class
25 fund (*id.* at 3), and "[u]nder no circumstances will any portion of the Damages Fund revert to
26 Defendant" (*id.* at 18).  Any balance remaining in the damages class fund after distribution will
27 be "distributed to the Eviction Defense Project of the San Francisco Bar Association, Justice
28 and Diversity Center, a non-sectarian §501(c)(3) charitable organization" (*ibid*).

4

**CONCLUSION**

Subject to the foregoing, plaintiff's motion for preliminary approval of the proposed settlement agreement is **GRANTED**. Provided that all required dates and deadlines are filled in, the proposed mail notice is **APPROVED**.

Notice has been given as required by the Class Action Fairness Act (Dkt. No. 154). The following dates are set: Mail notice shall be disseminated to class members by **DECEMBER 8**. Class counsel shall file a motion for final approval, as well as any motion for attorneys' fees or an incentive award, by **JANUARY 12, 2017**. The last day for class members to object or opt out, for defendant to oppose the attorneys' fees motion, and for the claims administrator to file proof of mailing notice shall be **FEBRUARY 9, 2017**. Class counsel shall respond to any objections or opposition by **FEBRUARY 23, 2017**. Attorneys who intend to appear at the final approval hearing shall file their notices of appearance by **MARCH 2, 2017**. The final approval hearing shall take place on **MARCH 9, 2017**.

The final pretrial conference and trial dates are **VACATED**, subject to reset if final approval is not granted.

**IT IS SO ORDERED.**

Dated: November 18, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE