Joseph J. Tabacco, Jr. (SBN 75484)
Kristin J. Moody (SBN 206326)
A. Chowning Poppler (SBN 272870)
**BERMAN DEVALERIO**
One California Street, Suite 900
San Francisco, CA 94111
Telephone: (415) 433-3200
Facsimile: (415) 433-6282
Email: jtabacco@bermandevalerio.com
        kmoody@bermandevalerio.com
        cpoppler@bermandevalerio.com

*Local Counsel for Plaintiff and the Class*

Patricia I. Avery (*pro hac vice*)
Matthew Insley-Pruitt (*pro hac vice*)
Adam J. Blander
**WOLF POPPER LLP**
845 Third Avenue, 12th Floor
New York, NY 10022
Telephone: (212) 759-4600
Email: pavery@wolfpopper.com
        minsley-pruitt@wolfpopper.com
        ablander@wolfpopper.com

*Counsel for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| LATASHA McLAUGHLIN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., d/b/a WELLS FARGO HOME MORTGAGE,<br><br>Defendant. | **CLASS ACTION**<br><br>No.: 3:15-cv-02904-WHA<br><br>**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     March 9, 2017<br>Time:     8:00 a.m.<br>Place:    Courtroom 8 -19th Floor<br>Judge:    Honorable William Alsup |

# TABLE OF CONTENTS

**PAGE**

NOTICE OF MOTION AND MOTION .................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED ...................................................................... 1

INTRODUCTION ................................................................................................................. 2

PERTINENT FACTUAL AND PROCEDURAL BACKGROUND ........................................... 4

ARGUMENT ...................................................................................................................... 10

I.       THE COURT-APPROVED NOTICE COMPORTS WITH DUE PROCESS ................ 10

II.      THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE AND
         WARRANTS FINAL APPROVAL ............................................................................ 12

         A.       The Settlement Satisfies the *Churchill* Factors .................................... 13

                  1.       The Strength of Plaintiff's Case Juxtaposed with the Risk,
                           Expense, Complexity and Likely Duration of Further Litigation ............ 14

                  2.       The Risk of Maintaining Class Action Status .......................................... 16

                  3.       The Amount Offered in Settlement .......................................................... 17

                  4.       The Extent of Discovery and the Stage of the Proceedings .................... 19

                  5.       The Experience and Views of Counsel .................................................... 20

                  6.       Presence of a Governmental Participant ................................................. 20

                  7.       The Reaction of the Settlement Class to the Proposed Settlement .......... 21

         B.       The Proposed Settlement Satisfies This Court's Other Concerns ........................ 21

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) .......................................................................................... 12

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) (Corley, Mag. J.) ......................................................... 14, 21

*Boring v. Bed Bath & Beyond of Cal. Ltd. Liab. Co.*,
   No. 12-cv-05259-JST, 2013 WL 6145706 (N.D. Cal. Nov. 21, 2013) ................................... 24

*Ching v. Siemens Indus., Inc.*,
   No. 11-cv-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014).................................... 16

*Churchill Village, LLC v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ...................................................................................... 12, 13

*Deaver v. Compass Bank*,
   No. 13-CV-00222-JSC, 2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) .................................... 17

*Dennis v. Kellogg Co.*,
   No. 09-cv-1786-L (WMc), 2013 WL 6055326 (S.D. Cal. Nov. 14, 2013) .............................. 14

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156  (1974)................................................................................................... 10

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D. Cal. 1980)....................................................................................... 20

*Garner v. State Farm Mut. Auto. Ins. Co.*,
   No. CV 08-1365-CW, 2010 WL 1687832  (N.D. Cal. Apr. 22, 2010) .............................. 14, 24

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147  (1982)................................................................................................... 16

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................. 12, 13, 21

*Il Fornaio (Am.) Corp. v. Lazzari Fuel Co., LLC*,
   No. C 13-05197 WHA, 2015 WL 2406966 (N.D. Cal. May 20, 2015) ................................... 14

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...................................................................................... 13, 21

*In re Charles Schwab Corp. Sec. Litig.*,
   No. C 08-01510 WHA, 2011 WL 1481424  (N.D. Ca. Apr. 19, 2011)........................... 15, 22, 23

*In re Heritage Bond Litig.*,
   546 F.3d 667 (9th Cir. 2008) ........................................................................................ 12

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................................ 22

*In re Portal Software Secs. Litig.*,
   No. C-03-5138 VRM, 2007 WL 1991529 (N.D. Ca June, 30, 2007) ....................................... 22

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ...................................................................................... 22

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. Apr. 12, 2007) ................................................................. 2

*Jamison v. Bank of Am., N.A.*,
   No. 2:16-cv-00422-KJM-AC, 2016 U.S. Dist. LEXIS 88326 (E.D. Ca. July 7, 2016) ............ 17

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ................................................................................... 12, 13

*Larsen v. Trader Joe's Co.*,
   No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ...................... 12, 20, 21

*McLaughlin v. Wells Fargo Bank, N.A.*,
   No. C 15-02904 WHA, 2015 WL 10889993 (N.D. Cal. Oct. 29, 2015) ................................... 4

*McLaughlin v. Wells Fargo Bank, N.A.*,
   No. C 15-02904 WHA, 2015 WL 10889994 (N.D. Cal. Nov. 24, 2015) .................................. 4

*McLaughlin v. Wells Fargo Bank, N.A.*,
   No. C 15-02904 WHA, 2016 WL 3418337 (N.D. Cal. June 22, 2016) .................................... 6

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................. 20, 21

*Officers for Justice v. Civil Serv. Com.*,
   688 F.2d 615 (9th Cir. 1982) ........................................................................................ 13

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................................................ 16

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ................................................................................................... 5

*Taylor v. W. Marine Prod., Inc.*,
   No. C 13-04916 WHA, 2015 WL 2452788 (N.D. Cal. May 21, 2015) ................................. 14

*Tyson Foods, Inc. v.  Bouaphakeo*,
   136 S. Ct. 1036 (2016) ................................................................................................. 17

*Wixon v. Wyndham Resort Dev. Corp.*,
   No. C 07-02361 JSW, 2011 WL 3443650 (N.D. Cal. Aug. 8, 2011) .................................... 19

**Statutes**

15 U.S.C. § 1601 *et seq.*............................................................................................... 8

15 U.S.C. § 1639g ................................................................................................... 4

15 U.S.C. § 1640(a)(2)(A)(i) ................................................................................ 18

15 U.S.C. § 1640(a)(4) .......................................................................................... 18

**Rules**

12 C.F.R. 1026.36(c)(3) .......................................................................................... 4

12 C.F.R. Part 1026 ................................................................................................. 8

Federal Rules of Civil Procedure 23 ................................................................. *passim*

**Other Authorities**

Svetlana Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action*
   *Litigation: 2015 Full-Year Review*, NERA Economic Consulting, at 33 (Jan. 25, 2016) ........ 17

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on March 9, 2017 at 8:00 a.m. in Courtroom 8, 19th Floor, the Honorable William H. Alsup presiding, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff Latasha McLaughlin ("Plaintiff") will move this Court for an order granting final approval of the proposed settlement set forth in the Class Settlement Agreement and Release ("Settlement" or "Settlement Agreement"), Dkt. No. 151-1 and refiled as Exhibit A to the Combined Decl. (as defined below), on the grounds that it is fair, reasonable, and adequate and merits final approval under Fed. R. Civ. P. 23(e).[1]

This Motion is based on the accompanying Memorandum of Points and Authorities in Support of Final Approval of Proposed Class Action Settlement; the Combined Declaration of Patricia I. Avery and Kristin J. Moody In Support of (1) Motion For Final Approval of Class Action Settlement and (2) Motion For Attorneys' Fees, Costs, and Service Award ("Combined Decl.");[2] the Declaration of Class Representative Latasha McLaughlin In Support of (1) Motion For Final Approval of Class Action Settlement and (2) Motion For Attorneys' Fees, Costs, and Service Award ("McLaughlin Decl."); all pleadings and records filed herein; the argument of counsel; and such oral and documentary evidence as may be presented at the hearing of this Motion.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the application for final approval of proposed class action settlement should be granted upon a finding that:

1. The terms of the proposed Settlement are fair, adequate and reasonable under Fed. R. Civ. P. 23(e); and

2. Notice was sufficient in accordance with Fed. R. Civ. P. 23(c).

---

[1]   All capitalized terms not otherwise defined herein retain the same definitions as in the Settlement Agreement.

[2]   To minimize the burden on the Court, Counsel submits a single declaration providing factual support both for this motion for final settlement approval and for Counsel's concurrently filed application for attorneys' fees, costs, and a service award.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

In this Court's November 18, 2016, Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"), Dkt. No. 158, at 2, the Court found that the Settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, [and] does not improperly grant preferential treatment to class representatives or segments of the class . . . ." (citing *In re Tableware Antitrust Litig*., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. Apr. 12, 2007). Plaintiff respectfully requests that this Court grant final approval of the proposed class action Settlement with Defendant Wells Fargo Bank, N.A., ("Defendant," "Wells Fargo," or the "Bank"). As discussed below and detailed in the Combined Declaration submitted herewith, the Settlement before the Court establishes (1) an $880,000 Damages Class Fund benefitting the Damages Class; and (2) a practice change whereby Defendant will revise its template payoff statement letter to include a borrower's insurance claim fund balance as well as explanatory notes (the "Practice Change"), benefiting the Declaratory Relief Class, in consideration for resolving the above-captioned Action.

Plaintiff believes that this is an excellent settlement because both of the classes certified by the Court are receiving substantial benefits. Since TILA limits monetary damages to $1 million on a class-wide basis, the Damages Class Fund represents ***88%*** of the total recovery that the Damages Class could have received, without the risk and delay associated with trial and inevitable appeal by Defendant. Each account held by Damages Class Members is expected to receive more than $2,500. Meanwhile, the Practice Changes will require Defendant to disclose insurance claim funds on all of its payoff statements going forward (i.e., 100% of the equitable relief initially sought), which is a benefit that ***exceeds*** what could be achieved after a trial on behalf of the Declaratory Relief Class certified by the Court. Instead of simply recognizing that the funds should be disclosed, they actually will be disclosed. In fact, these Practice Changes benefit not only the Declaratory Relief Class (which is composed of the homeowners with loans serviced and owned by Wells Fargo on one particular point in time), but all homeowners with loans serviced by Wells Fargo—whether or not they are owned by Wells Fargo—on an ongoing basis. This can easily include more than 12,000 homeowners each year.

1    In exchange for these benefits, the Settlement Agreement includes appropriate, narrowly

2    tailored, releases from the Class.  As this Court noted, the Settlement "defines the classes using

3    the exact definitions set forth in the class certification order" and the Settlement "releases only

4    claims actually asserted in this action."  *See* Preliminary Approval Order, at 3.  The Settlement

5    does not release claims for actual damages for the absent class members, which were not certified

6    by the Court.  *Id.*  Nor does it release any damages claims for the Declaratory Relief Class

7    Members who would not receive a payment from the Damages Class Fund.  The only parties

8    releasing claims are the Damages Class Members who do not exclude themselves and whose

9    Notice is not returned undeliverable, and the Declaratory Relief Class Members.

10    Moreover, the Damages Class Fund will only benefit the Damages Class Members.  The

11    Settlement does not depend on any fees being awarded from Plaintiff's Motion for Attorneys'

12    Fees, Costs, and Service Award, and such awards will be paid by Defendant directly and will

13    not diminish the Damages Class Fund.  Importantly, *no portion* of the Damages Class fund

14    reverts to Defendant.

15    The Settlement complies with this Court's other concerns articulated in its "Notice

16    Regarding Factors to be Evaluated for Any Proposed Class Settlement" (Dkt. No. 17; hereinafter

17    "Notice on Class Settlement Factors").  The parties reached an agreement only after the Classes

18    were certified by this Court and the Plaintiff found to be an adequate representative of the classes,

19    only after discovery, only following arm's-length negotiations spearheaded by Magistrate Judge

20    Donna M. Ryu, and without any evidence of collusion.  Damages Class Members have the

21    opportunity to easily opt out or object to the Settlement, Declaratory Relief Class Members can

22    easily object to the Settlement, and there is no burdensome claims process for the Damages Class

23    Members to receive a payment.  Finally, the proposed Notice follows the procedures that this

24    Court previously approved to send notice of class certification.

25    Accordingly, Plaintiff respectfully requests that the Court grant final approval of the

26    Settlement.

27

28

## PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

The Combined Declaration, which accompanies this memorandum, details the factual and procedural background of this case and the events that led to the instant settlement. A summary of this action is provided below.

### The Pleadings and Defendant's Motion to Dismiss

On June 23, 2015, Plaintiff Latasha McLaughlin filed this action against Defendant, her mortgage servicer, alleging it furnished her with a mortgage payoff statement that did not disclose the existence of $16,490.35 in held insurance claim funds and, as a result, failed to reflect an "accurate" statement of the total outstanding balance required to terminate the borrower's mortgage obligation, as required under the Truth in Lending Act ("TILA"), 15 U.S.C. §1639g, and its implementing regulation, Regulation Z, 12 C.F.R. 1026.36(c)(3). Dkt. No. 1. Plaintiff sought statutory damages of up to $1 million in the aggregate on behalf of the Damages Class (the maximum allowable under TILA), an order directing Wells Fargo to include insurance funds on payoff statements, and attorneys' fees and costs. *Id.*

Defendant moved to dismiss the Complaint, principally arguing that it was not compelled under TILA to disclose claim funds on payoff statements. This Court denied the motion on October 29, 2015, holding that TILA required such disclosure. *McLaughlin v. Wells Fargo Bank, N.A.*, No. C 15-02904 WHA, 2015 WL 10889993 (N.D. Cal. Oct. 29, 2015). Defendant then moved for leave to file a Motion for Reconsideration and moved to Certify an Immediate Appeal of that decision. Dkt. Nos. 40, 43. The Court rejected both motions. *McLaughlin v. Wells Fargo Bank, N.A.*, No. C 15-02904 WHA, 2015 WL 10889994 (N.D. Cal. Nov. 24, 2015). Regarding the motion to certify an appeal of the issue of whether TILA's accuracy requirement mandates disclosure of claim funds, the Court stated that "[i]t is, of course, possible that the district court erred, but if this issue is to go up on appeal, it would be best to go up on a full record of what actually happened rather than a thin motion to dismiss." *Id.* at *2.

Defendant eventually filed its answer,[3] raising three affirmative defenses:  (1) that Plaintiff was not injured, and therefore lacked standing, (2) that Wells Fargo "acted in accordance with all applicable law," and (3) that it acted in good faith under TILA.  Dkt. No. 104.

**Discovery**

Plaintiff and Defendant sought merits-based and class discovery in this litigation.  Both parties served initial disclosures, document demands and interrogatories; produced material responsive to those demands; and provided a witness for depositions, including Plaintiff Latasha McLaughlin (who testified as to both class certification and case merits issues), and Jody Leo, Defendant's corporate representative.  Plaintiff also served requests for admissions, to which Defendant responded.  Defendant issued a subpoena to Plaintiff's contractor, who produced documents and was deposed.  The parties also followed up the depositions and document production with meet and confer sessions concerning disputed and other discovery, and produced additional materials. Combined Decl. ¶3.

**Class Certification**

On January 21, 2016, Plaintiff filed her motion for class certification ("Class Certification Motion").   Defendant opposed the Class Certification Motion and also simultaneously filed both a motion for summary judgment dismissing the complaint and a motion to stay proceedings given the pendency of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). The Court thereafter denied the motion to stay, but postponed the hearing on the Class Certification Motion until after *Spokeo* was decided, given the possibility that it might affect the construction of a potential class.  After the Supreme Court rendered its decision in *Spokeo*, the parties submitted supplemental briefing on its impact.

After the hearing on Plaintiff's class certification motion, at which the Court requested additional authority on the subject of equitable relief under TILA, on June 22, 2016, the Court

---

[3]   Due to Defendant's failure to timely answer, Plaintiff had to file a motion to preclude the filing of affirmative defenses.  The parties eventually stipulated to the filing of an answer.

[3:15-cv-2904] PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF

5

issued its Class Certification Order, in which it granted Plaintiff's motion, in part, certifying two classes:  a Rule 23(b)(3) class of borrowers who received payoff statements within one year prior to the filing of the complaint (the "Damages Class"), and a Rule 23(b)(2) class of borrowers who had insurance claim funds held at the Bank on the date of the Class Certification Order (the "Declaratory Relief Class").  *McLaughlin v. Wells Fargo Bank, N.A.*, No. C 15-02904 WHA, 2016 WL 3418337 (N.D. Cal. June 22, 2016).  Defendant thereafter filed a petition pursuant to Rule 23(f) of the Federal Rules of Civil Procedure for permission to appeal the Class Certification Order, *see* Dkt. No. 133, Exh. A, and sought a stay in the District Court pending resolution of that petition, Dkt. No. 132.  On August 16, 2016, this Court denied Defendant's motion to stay proceedings. Dkt. No. 138.  On September 22, 2016 the Ninth Circuit Court of Appeals denied Defendant's petition.  Order Denying Petition, No. 16-80089 (9th Cir. Sep. 22, 2016).  Defendant mailed Class Members a Notice of Pendency of Class Action on September 28, 2016.

**Summary Judgment and Trial**

On October 6, 2016, Plaintiff filed a motion for summary judgment on her TILA claim, and Defendant filed a motion for summary judgment dismissing Plaintiff's complaint.  Dkt. Nos. 145, 146. In light of the Settlement, the court vacated the hearing date for both motions, which was scheduled for November 10, 2016.  The Court also vacated the trial date, scheduled for December 5, 2016. Dkt. No. 155.

**Settlement Negotiations**

Following Class Certification, the parties engaged in comprehensive negotiations in an attempt to resolve this Action.  On August 5, 2016, the parties participated in an all-day settlement conference with Magistrate Judge Ryu.  Settlement discussions continued for several weeks thereafter.  Combined Decl. ¶20.  Throughout the negotiations, the parties were attentive of each of the factors to be evaluated in connection with this Court's Notice on Class Settlement Factors.  *Id.*  The parties did not negotiate the terms of a fee agreement.  *Id.*  On or about October 17, 2016, the Parties reached final agreement on the material terms of the Settlement.  *Id.* at ¶22.

[3:15-cv-2904] PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF

6

On October 19, 2016, the parties executed the Settlement Agreement. *Id.*

**Settlement Terms**

The Settlement provides for substantial monetary relief to those who received payoff statements that omitted claim funds and Wells Fargo will, going forward, disclose claim funds on payoff statements for all borrowers with such funds.

*Monetary Relief to the Damages Class*

Wells Fargo will establish a Damages Class Fund in the amount of $880,000, representing 88% of total available recovery under TILA. Damages Class Members will receive settlement checks representing a pro rata share, on a per account basis, of the Damages Class Fund ("The Pro Rata Plan of Allocation"). In other words, accounts with two named borrowers (e.g., spouses) will share in a single pro rata share of the Damages Class Fund.

*Practice Change*

Wells Fargo will revise its template payoff statement letter to disclose property insurance funds held by it for all residential mortgage loans that it services (not just loans that it both owns and services). Specifically, the letters will add the following language:

- Under the Total Amount Due calculation:

  Restricted Escrow Balance: $_____
  As of the date of this statement, $___ received from a property insurance claim is being held in restricted escrow. All or some of such funds can be applied to the total amount due, if not used to pay for repairs to the property, including claims of third parties such as contractors. If you have questions about the application of these funds, please call us at [PHONE].

- After the statement "we may adjust figures in this statement, if prior to the payoff date":

  We make disbursements from Restricted Escrow to pay for repairs.

Settlement Agreement, at ¶4.3.

*The Release*

In consideration for the above relief, Class Members will release their claims for statutory damages (but not actual damages) under TILA arising from Defendant's failure to disclose claim

funds on its payoff statements, as alleged in Plaintiff's Complaint.[4] The Settlement defines "Released Claims" as follows:

> any and all actions, causes of action, obligations, costs, expenses, damages, losses, claims, liabilities, and demands, of whatever character that were asserted in this Action, to wit, violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* and Regulation Z, 12 C.F.R. Part 1026 for the failure of Wells Fargo to disclose insurance claim fund balances in payoff statements, except that any Class Member's claims for actual damages as a result of such violations are expressly excluded from this release.

Settlement Agreement, at ¶ 1.20.  Only those Class Members who do not exclude themselves and whose Notice is not returned undeliverable are releasing claims.[5]

Additionally, there is no difficult or burdensome claims procedure.  Once the Settlement is approved, the Administrator will simply cut checks to Damages Class Members for the appropriate, pro-rata share of the Settlement Fund and mail them to the Damages Class Members.  Further, if not promptly cashed, the Administrator and Class Counsel will follow up with the Damages Class Members regarding cashing their checks.

*Fee and Costs Application*

The Settlement Agreement also contemplates that Class Counsel will move the Court for an award of reasonable attorneys' fees and expenses ("Fees and Costs Application") incurred in the Action, which Defendant may oppose.[6]  Class Counsel may also move the Court to award

---

[4]   Plaintiff herself filed a stipulation to voluntarily dismiss without prejudice her individual claim for actual damages asserted in the Complaint.  *See* Stipulation Dismissing Only Actual Damages Claim, Dkt. No. 152, Settlement Agreement, at ¶ 3.2.

[5]   "Releasing Persons" is defined in Settlement Agreement, at ¶ 1.18 as:

> Plaintiff and each Class Member, on behalf of themselves and their agents, administrators, servants, employees, representatives, assigns, heirs, executors, trustees, joint venturers, partners, successors, predecessors and attorneys, and each of them, excluding: (i) all Class Members whose notice is returned as undeliverable and who cannot be located with reasonable diligence; and (ii) all Damages Class Members who timely request exclusion from the Class pursuant to Section 5.4 of this Agreement.

[6]   The Notice informed Class Members that Class Counsel will apply for no more than $1.95 million in fees and no more than $45,000 in costs.

---

[3:15-cv-2904] PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF

8

1   Plaintiff a modest $5,000 payment as compensation ("Service Award Application").  Indeed,

2   Plaintiff is filing contemporaneously with this Motion such applications.  The Settlement,

3   however, is not conditioned on the outcome of any such application.  Moreover, attorneys' fees

4   and expenses and any service award would be paid separately by Wells Fargo, and would not

5   diminish the Damages Class Fund.  *See* Settlement Agreement, ¶ 4.6 ("<u>No Diminishment of</u>

6   <u>Damages Class Fund</u>. Any attorneys' fees and costs award or service award shall be paid by

7   Wells Fargo directly, and shall not, in any manner, diminish the Damages Class Fund.").[7]

8   **Preliminary Approval**

9           Following execution, Plaintiff submitted the Settlement to the Court in connection with

10  her unopposed motion for preliminary approval.  Dkt. Nos. 151, 151-1.  On November 17, 2016,

11  the Court held a hearing on the motion (Dkt. No. 157), and the following day issued its

12  Preliminary Approval Order.  As pertinent here, the Court found as follows:

13          **1. BENEFIT TO CLASS MEMBERS**

14                  The proposed settlement agreement establishes a damages class fund of
    $880,000.00, to be distributed evenly among accounts held by class members
15          (Dkt. No. 151-1 Exh. 1 § 1.9). Since TILA caps statutory damages in class
            actions at one million dollars, the damages class fund represents 88 percent of
16          the best possible outcome the damages class could have obtained through
            litigation (Dkt. No. 151 at 13). See 15 U.S.C. 1640(a)(2)(B). The difference
17          between the maximum possible recovery and the damages class fund accounts
            for avoided risks of litigation, including the risk that a jury might return a
18          defense verdict and the risks and costs of an "inevitable appeal" even if the class
            plaintiff prevailed at trial. Given that this proposed settlement agreement comes
19          after over a year of litigation, discovery, and motion practice, both sides have
            had ample opportunity to carefully assess and weigh the relative strengths and
20          weaknesses of their legal positions. The discounted payout seems to reflect
            those considerations.
21
                    In addition to monetary benefits to the class, the proposed settlement
22          agreement compels defendant to change its business practices to address the
            issues raised in this lawsuit. Specifically, the agreement provides that defendant
23          "will revise the templates used to generate payoff statement letters for all
            residential mortgage loans that it services to include . . .language" disclosing
24          insurance proceeds held by defendant (Dkt. No. 151-1 Exh. 1 § 4.3). This
25
26  ────────────────────────

27  [7]   On October 31, 2016, Defendant effectuated notice pursuant to the Class Action Fairness Act.  Dkt.
    No.154.

28

corrective measure, combined with the monetary payout to the damages class, falls within the range of possible approval.

**2. SCOPE OF THE RELEASE**

The proposed settlement agreement defines the classes using the exact definitions set forth in the class certification order (*compare* Dkt. No. 123 at 12–13 *with* Dkt. No. 151-1 Exh. 1 §§ 1.8, 1.10). Moreover, the proposed settlement agreement releases only claims actually asserted in this action. Importantly, the release "expressly exclude[s]" any class member's "claims for actual damages as a result of" defendant's failure to disclose insurance proceeds in payoff statements (*id.* at § 1.20). This accounts for TILA's provision for actual damages, in addition to statutory damages as described above. See 15 U.S.C. 1640(a)(1). The scope of the class definition and release in the proposed settlement agreement is appropriately tailored and thus falls within the range of possible approval.

Preliminary Approval Order, at 2-3.  The Court also approved the proposed Notice plan.  *Id.* at 5.

The Administrator has mailed the Notice pursuant to the Preliminary Approval Order. Combined Decl. ¶23.  Plaintiff now files the instant Motion for Final Approval of the Settlement.

## **ARGUMENT**

## I.   THE COURT-APPROVED NOTICE COMPORTS WITH DUE PROCESS

Before the Court may grant final approval of a settlement for any class certified under Rule 23(b)(3), Fed. R. Civ. P. 23(c)(2) requires that the Court determine that the settlement provides the class with the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). For any class certified under Rule 23(b)(2), "the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A).  Upon preliminary approval, Class Counsel implemented Notice in compliance with due process and Rule 23.  Combined Decl. ¶23.

Pursuant to the Preliminary Approval Order, the Notices of Pendency and Settlement of Class Action ("Notice") were mailed on December 8, 2016, to all Class Members.  *Id.*

Consistent with Fed. R. Civ. P. 23 and the Court's Preliminary Approval Order, the Notice informs the Class of: (1) the Settlement consideration; (2) the parties' reasons for proposing the Settlement; (3) the estimated average recovery per Damages Class Member; (4)

[3:15-cv-2904] PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF

10

1   the contact information of Counsel's representatives who are available to answer questions; (5)

2   their right to participate in the Settlement, object to any aspect of the Settlement, and/or the

3   Applications for Fees and Costs and a Service Award., or exclude themselves from the

4   Settlement and how to do so; (6) the dates and deadlines for certain Settlement-related events;

5   (7) the unburdensome claims process (i.e., direct mailing by the Administrator without the

6   necessity of filing a proof of claim form); and (8) that the Administrator, Garden City Group,

7   LLC ("GCG"), will maintain a toll-free number to answer questions as well as a website where,

8   among other things, key pleadings in this case may be viewed. Combined Decl. ¶24. The Notice

9   also informed recipients of Counsel's intent to apply for an award of attorneys' fees not to exceed

10   $1.95 million and for reimbursement of costs in an amount not to exceed $45,000.00, and of

11   Plaintiff's intent to apply for a $5,000 Service Award. *Id.*

12   The settlement website, http://mortgagepayoffstatementclassaction.com, contains the

13   Notice, the Settlement, as well as copies of relevant Court documents including the Complaint,

14   Wells Fargo's Answer to the Complaint, the Order that TILA Required Insurance Proceeds to

15   be Reflected in Payoff Statements (described as the "Order Denying Motion to Dismiss"), the

16   Order Certifying Two Classes, and the Order Granting Preliminary of Class Action Settlement.

17   Combined Decl. ¶25. Plaintiff's Motion for Final Approval of Proposed Class Action Settlement

18   and supporting papers, and Plaintiff's Motion for Attorneys' Fees and Costs and a Service Award

19   and supporting papers will also be posted on the website when filed. *Id.*

20   The Notice has been mailed to 370 Damages Class Members and 3,234 Declaratory

21   Relief Members. Combined Decl. ¶26. As of this filing, one Damages Class Member submitted

22   a letter to the Court stating that he was opting out/objecting to the Settlement. Dkt. No. 160.

23   Class Counsel has been informed by this Class Member that he is withdrawing his letter and that

24   he has mailed a notice to the Administrator that he withdraws his objection and exclusion so that

25   he can participate in the Settlement. Thus, to date, no Class Member has opted out of the

26   Damages Class and no Class Member of either Class has objected to the proposed Settlement.

27   *See* Combined Decl. ¶27. The last day to file objections is February 9, 2017. Should any

28

objections be filed after the filing of this Motion, Plaintiff will respond within the schedule set by the Court.[8]

Since the mailing of the Notice, Class Counsel have received dozens of phone calls from Class Members and have answered their questions.  Combined Decl. ¶30.

As such, under the circumstances of this case, the "best notice practicable" and "appropriate notice to the class" was disseminated.

## II.   THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE AND WARRANTS FINAL APPROVAL

"There is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015).  *See also Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."), *appeal dismissed* (Nov. 17, 2014).  Even still, Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  A court may grant approval if it determines that the proposed class action settlement is "fundamentally fair, adequate, and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674-75 (9th Cir. 2008).  Nevertheless, "the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court. . . .  Although Rule 23 imposes strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (citing *Hanlon v. Chrysler*

---

[8]   Three Declaratory Relief Class Members have indicated that they would like to opt out of the Settlement, but, as members of a Rule 23(b)(2) class, they are not eligible to do so under the terms of the Settlement.

[3:15-cv-2904] PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF

12

1    *Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).

2        **A.      The Settlement Satisfies the *Churchill* Factors**

3        In order to evaluate the fairness, adequacy and reasonableness of a proposed class

4    settlement, courts are instructed to weigh the following non-exhaustive list of factors: "(1) the

5    strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further

6    litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount

7    offered in settlement; (5) the extent of discovery completed and the stage of the proceedings;

8    (6) the experience and views of counsel; (7) the presence of a governmental participant; and

9    (8) the reaction of the class members to the proposed settlement." *Churchill*, 361 F.3d at 575

10   (citing *Hanlon*, 150 F.3d at 1026); *see also Lane*, 696 F.3d at 819. No one factor controls, and

11   the "importance to be attached to any particular factor will depend upon . . . the nature of the

12   claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented

13   by each individual case." *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir.

14   1982).   An examination of the *Churchill* factors below reinforces this Court's preliminary

15   finding that the Settlement meets these requirements and warrants approval.[9]

16

17

18   ―――――――――――――――
     [9]    The Ninth Circuit in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011),

19   raised concerns about approving a class action settlement where a settlement agreement is negotiated
     prior to formal class certification, outlining three settlement terms that "could" indicate collusion. *Id.* at

20   947.  These are: (1) when counsel receive a disproportionate distribution of the settlement, or when the
     class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties

21   negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart
     from class funds which carries the potential of enabling a defendant to pay class counsel excessive fees

22   and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and (3) when the
     parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id.*

23   None of the indicia of collusion identified in Bluetooth is present in this proposed Settlement. The

24   Classes have already been certified.  The Damages Class is receiving 88% of the maximum recovery.
     (The Declaratory Relief Class is not entitled to monetary damages, but is receiving relief under the

25   Practice Change.)  There is no "clear sailing" arrangement.  There is no reversion to Wells Fargo.  In
     short, none of the Bluetooth concerns apply here.

26   *Bluetooth* itself noted the factors to be considered by the District Court will vary from case to case, but

27   indicated that courts, particularly where a class has already been certified, should weigh the factors set
     forth in *Churchill*.

28   ―――――――――――――――

### 1.    The Strength of Plaintiff's Case Juxtaposed with the Risk, Expense, Complexity and Likely Duration of Further Litigation

One of the key factors in evaluating a proposed settlement is the risk of continued litigation balanced against the certainty and immediacy of recovery from a settlement. Ultimately, while Plaintiff and Class Counsel maintain they have a strong case, significant uncertainties remain going forward.  *See Taylor v. W. Marine Prod., Inc.,* No. C 13-04916 WHA, 2015 WL 2452788, at *2 (N.D. Cal. May 21, 2015) ("Plaintiffs may have a meritorious case, but the risks inherent in continued litigation are substantial"); *Il Fornaio (Am.) Corp. v. Lazzari Fuel Co., LLC*, No. C 13-05197 WHA, 2015 WL 2406966, at *3 (N.D. Cal. May 20, 2015) (finding the settlement to be fair, reasonable, and adequate "[c]onsidering the risks of protracted litigation"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015) (Corley, Mag. J.) ("In light of the risks and costs of continued litigation, the immediate rewards to class members are preferable."); *Dennis v. Kellogg Co*., No. 09-cv-1786-L (WMc), 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013) ("[S]ettlement avoids the risks of extreme results on either end, *i.e.,* complete or no recovery.  Thus, it is plainly reasonable for the parties at this stage to agree that the actual recovery realized and risks avoided here outweigh the opportunity to pursue potentially more favorable results through full adjudication.").  Here, there are clearly risks associated with surviving summary judgment, winning at trial, and winning an appeal.  The Settlement is, therefore, in the best interest of the Settlement Class.

Class Counsel, who have a great deal of experience in the prosecution and resolution of consumer class actions, have carefully evaluated the merits of their case and the proposed Settlement.  Class Counsel believe that they have a strong case and that there is sufficient evidence to prevail before a jury on these claims.  Class Counsel, however, recognize that there exist challenges in this litigation that could pose significant risks regarding their ability to prevail and the scope of damages if the case were to proceed to trial, and thereafter the inevitable appeal before the Ninth Circuit.  Combined Decl. ¶13; *see Garner v. State Farm Mut. Auto. Ins. Co*., No. CV 08-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) ("[T]he court may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range

[3:15-cv-2904] PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF

14

1    of settlement by considering Plaintiff's likelihood of recovery").

2        Indeed, Defendant's unsuccessful 23(f) Petition articulates what undoubtedly would

3    form the basis of its appeal, should this Court render final judgment in Plaintiff's and the Class's

4    favor.  **First**, Defendant believes that this Court erroneously interpreted TILA's payoff statement

5    provision, and that the disclosure of claim funds is not required.  **Second**, Defendant argues that

6    Plaintiff cannot demonstrate that she was harmed by Defendant's payoff statement and thus

7    lacked Article III standing to challenge it, and even if she did possess standing, a similar finding

8    was required for all absent class members.  **Third**, Defendant contends that TILA does not

9    provide for equitable relief (either injunctive or declaratory).  **Fourth**, Defendant argues that

10   claim funds are often owed to contractors, and thus cannot automatically be allocated as a credit

11   towards a mortgage debt and, in any event, inquiry into the claims made on each class member's

12   claim funds would preclude a commonality finding and the certification of any class.  *See* Dkt.

13   No. 133, Exh. A.  Obviously, Plaintiff vigorously disputes these four contentions.  *See*

14   Opposition to Defendant's Petition, Dkt. No. 133, Exh. B. However, Plaintiff recognizes that a

15   Ninth Circuit decision accepting any of them would likely eviscerate part, if not all, of the

16   recovery secured in this Settlement.  Combined Decl. ¶15.

17       Even if Plaintiff emerged victorious after appeal, there can be no doubt that the appeal

18   would be lengthy, during the pendency of which Defendant would continue to furnish inaccurate

19   payoff statements in violation of TILA.  Indeed, Defendant continues to dispute that the

20   statements are inaccurate or violate TILA.  Class Counsel understands the risks of litigation and

21   the fact that, even where a plaintiff's case appears strong, there is no guarantee against a defense

22   verdict.  *In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA, 2011 WL 1481424, *5

23   (N.D. Ca. Apr. 19, 2011) (approving settlement; "prosecuting these claims through trial and

24   subsequent appeals would have involved significant risk, expense, and delay to any potential

25   recovery"). As such, Class Counsel believes the Settlement is fair, reasonable and adequate, and

26   in the best interest of the Class.  *See* Combined Decl. ¶14.

27       The Settlement also was reached after Defendant's Motion for Summary Judgment was

28

1   pending.  Plaintiff was prepared to vigorously defend the motion, especially considering Plaintiff

2   filed a motion for summary judgment of her own.  *Id.* ¶16.  Nevertheless, the Court or the Ninth

3   Circuit granting Defendant's Motion (even in part) cannot be entirely ruled out.

4          In the absence of a settlement now, the parties would continue to expend a great deal of

5   time and money to litigate this case and prepare it for trial. *Id.* ¶17.  Further, a full trial on this

6   issue would be costly to all parties (requiring extensive preparation and the calling of witness

7   and experts from across the country), and would require significant judicial oversight.  *Id.*  Even

8   a judgment favorable to the Class, in light of the contested nature of every aspect of this case,

9   would unquestionably be the subject of post-trial motions and further appeals, which could

10  substantially prolong the case.

11         Accordingly, settlement of this litigation will ensure a substantial recovery and a

12  comprehensive Practice Change now and eliminate the risk of no recovery and no practice

13  change at all.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (favoring

14  settlement and finding this factor satisfied where "[i]nevitable appeals would likely prolong the

15  litigation, and any recovery by class members, for years"); *Ching v. Siemens Indus., Inc.*, No.

16  11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (settlement favored when

17  "significant procedural hurdles," including appeal, remain).

18                    **2.      The Risk of Maintaining Class Action Status**

19         As with any class certification decision, this Court's Order Certifying Two Classes is not

20  cast in stone and could be reconsidered based on findings of fact in the underlying case or new

21  case law.  *See* Fed. R. Civ. P. 23(c)(1)(C); *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160

22  (1982) (class certification orders are "inherently tentative"); *Rodriguez,* 563 F.3d at 966 ("A

23  district court may decertify a class at any time.").  This factor too weighs in favor of finally

24  approving this Settlement.  Defendant opposed class certification, among other things, on

25  grounds that Plaintiff and the absent Class members lacked standing under *Spokeo*, and that

26  standing "is a requirement that must be established for each member of the class."  Dkt. No. 110

27  at 5; *see also* Petition, at 15-16 (arguing that Court's finding that Plaintiff's standing conferred

28

1    standing on all absent class members "runs afoul" of *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.

2    Ct. 1036 (2016) and *Mazza v. American Honda Motor Co*., 666 F.3d 581 (9th Cir. 2012)).  In

3    fact, a decision in the Eastern District of California recently dismissed similar claims for

4    violation of TILA based on the plaintiff's lack of standing under *Spokeo*.  *Jamison v. Bank of*

5    *Am., N.A.*, No. 2:16-cv-00422-KJM-AC, 2016 U.S. Dist. LEXIS 88326 (E.D. Ca. July 7, 2016).

6    Given the ever-changing state of the case law interpreting *Spokeo* and its consequences for class

7    actions, enduring class certification is not guaranteed.

8                    **3.    The Amount Offered in Settlement**

9           The general standard by which courts are guided when deciding whether to grant final

10   approval of a settlement is whether the proposed settlement falls within the range of what could

11   be found "fair, adequate, and reasonable." Fed. R. Civ. P. 23(e)(2).  Because settlement by its

12   nature is a compromise, the law does not require that it reflect the best possible result in the

13   litigation.  Rather a settlement must simply fall within the ambit of reasonableness.  "[T]he very

14   essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest

15   hopes. . . .  [Accordingly,] [t]he proposed settlement is not to be judged against a hypothetical

16   or speculative measure of what might have been achieved by the negotiators."(citations omitted).

17   *Officers for Justice*, 688 F.2d at 624-25.

18          The $880,000 recovery under the proposed Settlement constitutes ***88% of the maximum***

19   ***available monetary recovery under TILA***, assuming Plaintiff and the Class prevailed in this

20   Action.  For any stage of the litigation, this recovery is an exceptional result.  *See, e.g.*, Svetlana

21   Starykh and Stefan Boettrich, *Recent Trends in Securities Class Action Litigation: 2015 Full-*

22   *Year Review*, NERA Economic Consulting, at 33 (Jan. 25, 2016) (reviewing securities class

23   actions between 1996 and 2015, finding that the median settlement value recovered only 18.9%

24   for cases with investor damages below $20 million); *see also Deaver v. Compass Bank*, No. 13-

25   CV-00222-JSC, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (settlement fund

26   constituting 10.7% of potential recovery deemed fair and reasonable).  TILA also caps individual

27

28

claims at $4,000 for each person.  15 U.S.C. § 1640(a)(2)(A)(i). [10]  If each of the 335 accounts whose records indicate that they are Damages Class Members with valid addresses participates in the Settlement, then Damages Class Members will receive checks for $2,626.86;[11] as addresses are returned undeliverable or individuals exclude themselves, this figure will increase.[12]  This is obviously a material recovery for homeowners.

The Practice Change secured by the Settlement is also exceptional and provides the Declaratory Relief Class with ***more*** than could have been achieved through further litigation. Plaintiff moved to certify an injunctive class under Rule 23(b)(2) in order to compel Defendant to disclose claim funds on its payoff statements, but instead the Court certified the Declaratory Relief Class, by which members might be entitled to a declaration that Defendant's conduct violated TILA.  The Practice Change compels Defendant to list claim funds, giving teeth to the declaratory relief available to Plaintiff and the Class assuming a favorable result at trial.

---

[10]  TILA identifies the factors a court utilizes in fixing a damages award. *See* 15 U.S.C. § 1640(a)(4) ("In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.")

[11]  After reviewing its records, Wells Fargo provided the Administrator with 370 accounts in the Damage Class which received Payoff Statements that did not disclose property insurance proceeds.  Out of this group, 35 accounts were returned undeliverable from the mailing on December 8, 2016, resulting in 335 Damages Class Members with presumptively valid addresses.  The Administrator is attempting to determine whether valid addresses can be found for these 35 accounts.  If the number of participating Damages Class Members remains the same, then the $880,000 Damages Class Fund (if approved) will be divided into 335 accounts, resulting in checks for $2,626.86.  If the Administrator is able to locate valid addresses for the 35 undeliverable accounts, that amount would be reduced slightly.  However, to date, the Administrator has not been able to locate any new addresses from those that were returned undeliverables in the December 8, 2016, mailing.  If such accounts do not opt-out of the Class, then the pro-rata amount that would be received by the Damages Class Members is $2,626.86.  Combined Decl. ¶26.  Accounts for which the Administrator is unable to locate new addresses are excluded from the Class and are not releasing any claims.  Settlement Agreement ¶1.18.  *See also* Notice on Class Settlement Factors ¶4 ("Usually, the Court will ***not*** extinguish claims of individuals known to have received no notice….")

[12]  As described in Class Counsel's notice to the Court, the Damages Class Members also received a blank W-9 Form that can be submitted to the Administrator. Dkt. No. 159.  If the Administrator does not receive a completed W-9 prior to the distribution of the fund approved by the Court, the payment received by the Damages Class Member will be subject to the applicable backup withholding.  Class Counsel intends to work with the Administrator to ensure that Damages Class Members who do not submit completed W-9 Forms are doing so intentionally.  Combined Decl. ¶33.

[3:15-cv-2904] PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF

18

1    Practically, Wells Fargo borrowers are far better off with this Settlement (which compels action

2    from Defendant) than from a declaration (which may or may not spur Defendant into action).[13]

3         The Declaratory Relief Class also only includes homeowners who had insurance funds

4    at the Bank on a specific date and whose mortgage was also owned by Wells Fargo.  However,

5    the Practice Change benefits many more borrowers, since it requires the Bank to disclose this

6    information on an ongoing basis.  The Practice Change also applies broadly to "all residential

7    mortgage loans that it services," Settlement Agreement ¶ 4.3, thereby benefiting borrowers

8    whose loan is only serviced by Wells Fargo and might be owned by another institution.  Wells

9    Fargo holds insurance funds for more than 12,000 accounts per year.  Combined Decl. ¶34.  The

10   Damages Class Fund and Practice Change provided by the Settlement constitutes an excellent

11   result, particularly considering the risk of no recovery if Plaintiff and the Class were unsuccessful

12   through trial and appeal.

13        **4.    The Extent of Discovery and the Stage of the Proceedings**

14        The stage of proceedings and extent of discovery are additional factors supporting the

15   Settlement.   The Combined Declaration details the extensive and thorough investigation

16   undertaken into the facts and law in this case.

17        In light of the extensive discovery conducted (Combined Decl. ¶¶3-8), Plaintiff and Class

18   Counsel had a comprehensive understanding of the strengths and weaknesses of the case and

19   had sufficient information to make an informed decision regarding the fairness of the Settlement

20   before entering into it.  *See Wixon v. Wyndham Resort Dev. Corp.*, No. C 07-02361 JSW, 2011

21   WL 3443650, at *5 (N.D. Cal. Aug. 8, 2011) ("The settlement does not come early in this

22   litigation. Wyndham unsuccessfully moved to dismiss Plaintiffs' complaint, and thereafter the

23   parties conducted fact discovery and exchanged expert reports on the issues of liability, class

24   certification, and damages. As such, the parties reached the proposed settlement at time when

25   they had a full and fair understanding of their cases and their opponents' case.").

26   _____

27   [13]  Notably, Defendant has not argued in Court filings that it has already altered its practices in response
     to this Court's ruling in October 2015 that the payoff letters must disclose insurance claim funds.

28

### 5.      The Experience and Views of Counsel

The opinion of experienced counsel supporting a class settlement after arm's-length negotiations is entitled to considerable weight. *See, e.g.*, *Larsen*, 2014 WL 3404531, at *5 ("The opinions of counsel should be given considerable weight both because of counsel's familiarity with this litigation and previous experience with cases."); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."), *aff'd*, 661 F.2d 939 (9th Cir. 1981).

Class Counsel are each long-time class action attorneys with decades of experience litigating consumer class actions. *See* Combined Decl. ¶35.  Each has participated in dozens of mediations and worked on the resolution of numerous settlements.  *Id.*  By the time settlement discussions began, Class Counsel had a thorough and sufficient understanding of the strengths and weaknesses of the claims and defenses, both factually and legally.  *Id*. at ¶19.  Likewise, Defendant is represented by well-respected and experienced counsel from a large firm recognized as a leader in the defending financial institutions in class actions.  *Id*. at ¶36.

The negotiations were serious, non-collusive and conducted by knowledgeable and well-informed counsel.  *See* Combined Decl. ¶19.  Class Counsel unambiguously recommend this Settlement as fair, adequate, and reasonable and respectfully ask that it be finally approved.  *Id.* at ¶14.  Accordingly, this factor strongly supports final approval.

### 6.      Presence of a Governmental Participant

Courts may also consider the impact of a governmental participant in the litigation.  No such actor is present in this litigation.  In such situations, courts have found that this consideration is inapplicable.  *Nat'l Rural Telecomms. Coop*., 221 F.R.D. at 528 ("There is no governmental participant in this Class Action.  As a result, this factor does not apply to the Court's analysis.").  Further, the relevant governmental officials were notified of the settlement pursuant to the notice

[3:15-cv-2904] PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF

20

provision of the Class Action Fairness Act ("CAFA").  *See* Dkt. No. 154.  "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *See Bellinghausen*, 306 F.R.D. at 258.  Class Counsel is aware of no state or federal official that has raised an objection or concern regarding the settlement.  *See* Combined Decl. ¶29.  Even if considered, this factor weighs in favor of settlement.

### 7.    The Reaction of the Settlement Class to the Proposed Settlement

The final *Churchill* factor considers the reaction of the Settlement Class.  In this case, after dissemination of the Notice and having given Settlement Class Members an opportunity to opine on the merits of the Settlement, to date, the Settlement Class overwhelmingly supports the Settlement.  To date, the only Damages Class Member to opt out or object has now indicated to Class Counsel that he will rescind his notice and participate in the Settlement.  Combined Decl. ¶27.  This kind of positive reaction on the part of the Settlement Class typically supports final settlement approval.  *See Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Larsen*, 2014 WL 3404531, at *5 ("'[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'" (quoting *Nat'l Rural Telecomms*, 221 F.R.D. at 529)).

### B.    The Proposed Settlement Satisfies This Court's Other Concerns

The Settlement contains no terms onerous to the Class, and displays no evidence of collusion or other conflicts of interest.  It is entirely consistent with this Court's Notice on Class Settlement Factors.[14]

---

[14]  To be sure, this Settlement was executed following class certification and thus is not subject to the heightened degree of scrutiny "for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair" as outlined in *In re Bluetooth*, 654 F.3d at 946.  As discussed, there is no hint of collision, in any event.

[3:15-cv-2904] PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF

21

The proposed Settlement here is the product of extensive, arm's-length negotiations, which included an all-day mediation session and continued telephonic negotiations with Magistrate Judge Ryu, which commenced only after considerable discovery and after the parties had the benefit of the Court's Motion to Dismiss and Class Certification rulings.  Counsel were thus able to make informed assessments regarding the merits of their claims and defenses.  *Cf. In re Charles Schwab*, 2011 WL 1481424, at *5 ("the class settlements were reached on the eve of trial when class counsel had completed discovery and had conducted extensive motion practice and were thus well aware of the issues and attendant risks involved in going to trial as well as the adequacy of the amount of the class settlement.").

The Parties made every effort to ensure that the negotiations and the Settlement Agreement complied with the factors listed in this Court's Notice on Class Settlement Factors as well as the Procedural Guidance for Class Action Settlements in this District (the "Procedural Guidance").  Most importantly, the Settlement was reached after the Class Certification Order, with the same plaintiff on behalf of the same classes as certified by the Court.  *See* Preliminary Approval Order at 3 ("The proposed settlement agreement defines the classes using the exact definitions set forth in the class certification order").  Class Counsel and Plaintiff therefore have made a thorough investigation into the facts and circumstances relevant to the claims alleged in the Complaint.

The Settlement "does not improperly grant preferential treatment to the [Plaintiff] or segments of the class."  *In re Portal Software Secs. Litig.*, No. C-03-5138 VRM, 2007 WL 1991529, at *5 (N.D. Ca June, 30, 2007).  The Settlement creates an $880,000 Damages Class Fund, in which Plaintiff's recovery will be determined according to the same formula as the recoveries of other Class Members.  *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (settlement may be approved preliminarily where it "does not improperly grant preferential treatment to class representatives or segments of the class"); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (preliminary approval is appropriate where "preliminary evaluation of the proposed settlement does not

[3:15-cv-2904] PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF

22

disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives . . . .") (citation omitted).

While the Settlement anticipates for the possibility that Class Counsel will apply for a $5,000 service award for Plaintiff, the Settlement is in no way conditioned on receiving this award nor would the award be paid out of the Damages Class Fund or in any way diminish the amount of the pro rata payment to each Damages Class member.  Settlement Agreement, §4.6. The Court, in its Preliminary Approval Order, found this provision "helpful" yet noted that it did not "automatically eliminate the risk that the proposed award might make a flawed or inadequate settlement more 'palatable' to the class plaintiff." Preliminary Approval Order at 3 (citing Notice on Class Settlement Factors, at 5).  However, as condition to the Settlement, Plaintiff voluntarily dismissed her individual claim for actual damages under TILA without prejudice.  Dkt. No. 152. Plaintiff, in her declaration, makes clear that her chief goal throughout this litigation has been to ensure that Wells Fargo would discontinue furnishing inaccurate payoff statements—a goal which has been achieved in this Settlement—and that the sheer possibility of recouping a service award has never been a factor in her decision-making.  McLaughlin Decl. ¶¶6-7.

Here, "the scope of the class settlement release of claims is reasonable and sufficiently limited." *In re Charles Schwab*, 2011 WL 1481424, at *6.  Consistent with the Notice on Class Settlement Factors, the Settlement releases only the TILA claim asserted in this Action arising from Defendant's failure to disclose claim funds on payoff statements. *Supra* at 7:9-20.[15] Plaintiff only sought statutory damages on behalf of the Class in the Class Certification Motion, which were the only damages certified by the Court.  In order to ensure that actual damages are not included in the release, the Settlement Agreement states that "any Class Member's claims

---

[15]  This limitation on the release of claims is particularly appropriate in this circumstance where many of the Class Members who have contacted Class Counsel are currently in a dispute with Wells Fargo regarding the proper distribution of their property insurance claim funds, and have been concerned that this Settlement might release their rights to their funds.  Class Counsel have made it clear that the TILA claims released in the Settlement in no way affect whether they have a right to their money nor does the Settlement release any claims for actual damages that a Class Member might have against Wells Fargo. Combined Decl. ¶31.

for actual damages as a result of such violations are expressly excluded from this release." *Id.* Class Counsel also considered that there may be damages claims available to members of the Declaratory Relief Class who received a payoff statement that did not disclose the existence of insurance funds after the cutoff for the Damages Class.  In order to ensure that these claims are not released, the Settlement Agreement states that "Declaratory Relief Class Members who are not Damages Class Members are not releasing claims for damages, if any."   Settlement Agreement, ¶ 1.20.  The Settlement does not release claims that "could have been brought" nor does it release claims for those members whose Notices are returned as undeliverable.

The Settlement Agreement provides that the monies in the Damages Class Fund will be divided pro rata, on a per account basis, among all the homeowners in the Damages Class. The settlement checks are to be cashed within 120 days of the date of the check.  If any distribution checks are not cashed within 90 days of being mailed, the Administrator and/or Class Counsel may attempt to notify the Damages Class Member and remind such borrower(s) to cash their check(s).  Should any balance remain in the Damages Class Fund after such distribution, the balance is to be distributed to the Eviction Defense Project of the San Francisco Bar Association, Justice and Diversity Center, a non-sectarian §501(c)(3) charitable organization.  *See Boring v. Bed Bath & Beyond of Cal. Ltd. Liab. Co.*, No. 12-cv-05259-JST, 2013 WL 6145706, at *7 (N.D. Cal. Nov. 21, 2013) ("An award to a legal services organization is often an appropriate use of *cy pres* funds.").  *See, e.g., Garner*, 2010 WL 1687832, at *5 (distributing uncashed class payments to two legal services organizations).  Under no circumstances will any portion of the Damages Fund revert to Defendant.  Settlement Agreement, ¶ 4.2.  *Cf.* Notice on Class Settlement Factors (reversion "is a red flag").

Moreover, as already stated, the Settlement Agreement specifically states that its effect is not conditioned on the amount of any attorneys' fees and costs awarded.  This is consistent with the Notice on Class Settlement Factors.[16]

---

[16]  *See* ¶ 4.4 ("Notwithstanding any other provision of this Agreement, this Agreement and the finality of the Effective Date is not conditioned on the Court's approval of any attorneys' fees and costs sought

[3:15-cv-2904] PLAINTIFF'S MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF

24

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Settlement.[17]

DATED:  January 12, 2017                    Respectfully submitted,


                                           **WOLF POPPER LLP**

                                           By:     /s/ Patricia I. Avery
                                                   Patricia I. Avery (*pro hac vice*)

                                           Matthew Insley-Pruitt (*pro hac vice*)
                                           Adam J. Blander
                                           845 Third Avenue, 12th Floor
                                           New York, NY 10022
                                           Telephone:  (212) 759-4600
                                           Email: pavery@wolfpopper.com
                                                   minsley-pruitt@wolfpopper.com
                                                   ablander@wolfpopper.com

                                           *Counsel for Plaintiff and the Class*


                                           Joseph J. Tabacco, Jr. (SBN 75484)
                                           Kristin J. Moody (SBN 206326)
                                           A. Chowning Poppler (SBN 272870)
                                           **BERMAN DEVALERIO**
                                           One California Street, Suite 900
                                           San Francisco, CA 94111
                                           Telephone:  (415) 433-3200
                                           Facsimile:  (415) 433-6282
                                           Email: jtabacco@bermandevalerio.com
                                           kmoody@bermandevalerio.com
                                           cpoppler@bermandevalerio.com

                                           *Local Counsel for Plaintiff and the Class*

---

by Class Counsel and a reduction by the Court or modification by an appellate court of the fees and costs to Class Counsel will not affect any of the Parties' rights and obligations under this Agreement.").

[17]   Class Counsel previously submitted the proposed final order approving the class action settlement, as well as the application for attorneys' fees, costs, and a service award.  Dkt. No. 151-1, Exhibit C.  Because this proposed final order provides for exhibits listing the Class Members who have filed timely and valid requests for exclusion from the Class, as well as the releasing members of the Class (under seal), Class Counsel will submit an updated proposed final order at the appropriate time when this information is available.