IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATASHA MCLAUGHLIN, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>WELLS FARGO BANK, N.A., d/b/a WELLS FARGO HOME MORTGAGE,<br><br>  Defendant. | No. C 15-02904 WHA<br><br>**ORDER RE PLAINTIFF'S MOTIONS FOR FINAL APPROVAL OF CLASS SETTLEMENT AND ATTORNEY'S FEES** |

## INTRODUCTION

In this TILA class action, plaintiff moves for final approval of a proposed settlement agreement and for attorney's fees. The motion for final approval is **GRANTED**. The motion for attorney's fees is **GRANTED IN PART**.

## STATEMENT

The background of this case has been set forth in detail in a prior order (Dkt. No. 123) and does not need to be repeated here. In brief, plaintiff Latasha McLaughlin asserts class claims against defendant Wells Fargo Bank, alleging that defendant failed to provide accurate payoff statements as required by the Truth in Lending Act.

The proposed settlement follows over a year of contentious litigation, including discovery and extensive motion practice. To recap just the highlights: Class counsel successfully opposed defendant's motion to dismiss and subsequent motion for leave to seek reconsideration; partially succeeded in opposing defendant's first motion to stay; successfully

1  certified two classes (one to pursue damages and another to pursue declaratory relief); and
2  successfully opposed defendant's second motion to stay (*see* Dkt. Nos. 36, 46, 89, 123, 138).

3  Plaintiff then moved unopposed for preliminary approval of the proposed class
4  settlement (Dkt. No. 151).  That motion indicated that class counsel would request up to $1.95
5  million in attorney's fees, and that plaintiff would apply for an incentive award of five thousand
6  dollars.  Neither the attorney's fees nor the incentive award would diminish the settlement fund;
7  rather, defendant would separately pay any amount awarded.  A prior order granted preliminary
8  approval but advised that both the estimated attorney's fees and incentive award requests were
9  subject to reduction at the final approval stage (Dkt. No. 158 at 3–4).

10  Plaintiff now moves for final approval of the proposed class settlement (Dkt. No. 163)
11  and for attorney's fees (Dkt. No. 166).  In the latter motion, plaintiff seeks $1.85 million in
12  attorney's fees, $43,063.76 in costs, and an incentive award in the amount of five thousand
13  dollars.  No class member has objected to either motion (Dkt. No. 173 at 7).  Defendant opposes
14  only plaintiff's request for attorney's fees and costs; it does not oppose plaintiff's request for an
15  incentive award (Dkt. No. 169).  This order follows full briefing and oral argument.

## ANALYSIS

**1.  PROPOSED CLASS SETTLEMENT.**

18  A court may approve a proposed class settlement only upon finding that it is fair,
19  reasonable, and adequate, taking into account (1) the strength of the plaintiff's case; (2) the risk,
20  expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class
21  action status throughout the trial; (4) the amount offered in settlement; (5) the extent of
22  discovery completed and the stage of the proceedings; (6) the experience and view of counsel;
23  (7) the presence of a governmental participant; and (8) the reaction of the class members to the
24  proposed settlement.  F.R.C.P. 23(e); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934,
25  944 (9th Cir. 2015).  Two of the factors are inapplicable here because the classes are certified
26  and there is no governmental participant in this case.

27  As stated, the parties negotiated this proposed class settlement after a year plus of
28  litigation, which included discovery, extensive motion practice, and class certification.  Plaintiff

has generally, albeit not unequivocally, prevailed in motion practice thus far, but class counsel acknowledges several risks associated with continuing this litigation. For example, the case might not survive summary judgment or prevail at trial. Even if it did, an appeal is all but inevitable (indeed, defendant attempted to appeal twice prior to this point), and there is no guarantee that said appeal would be decided in plaintiff's favor.

The proposed class settlement provides for a settlement fund of $880,000, representing 88 percent of the maximum monetary recovery that would have been available under TILA had plaintiff prevailed. *See* 15 U.S.C. 1640(a)(2)(B) (limiting class recovery under TILA to "the lesser of $1,000,000 or 1 per centum of the net worth of the creditor"). This amount will not be diminished by, nor is it contingent upon, any outcome of plaintiff's motion for attorney's fees. Additionally, the proposed class settlement requires defendant to implement a "practice change" that reforms its payoff statements to comply with TILA, resulting in further and prospective benefit to class members. The release in the proposed class settlement is tailored to the certified classes, releases only class claims actually brought in this action, and does not bind any class member whose notice was returned as undeliverable and who could not be located with reasonable diligence. Class counsel are experienced in consumer class action litigation and believe this is an excellent result for class members. And, as stated, no class member objected to the proposed class settlement.

In short, having considered the applicable factors, this order finds the proposed class settlement is fair, reasonable, and adequate so as to warrant final approval.

**2.    ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARD.**

TILA provides that "any creditor who fails to comply with any requirement imposed [hereunder] . . . with respect to any person is liable to such person in an amount equal to the sum of . . . in the case of any successful action to enforce the foregoing liability . . . the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. 1640(a)(3). "In 'common-fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage or lodestar method" to calculate reasonable attorney's fees. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

1029 (9th Cir. 1998). Under a fee-shifting statute like TILA, however, the court must calculate an award of attorney's fees using the lodestar method. *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). Under this method, a district court must first multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate to arrive at the lodestar, and then determine whether additional considerations warrant adjusting the lodestar. *Ibid.*[*]

Class counsel billed 2,340.3 hours for work done on this case. Their rates for both attorneys and staff range from $285 per hour (paralegals) to $850 per hour (partners). According to class counsel, multiplying the aforementioned hours and rates yields a lodestar of $1,476,421.75. Plaintiff further requests a multiplier of approximately 1.25 to reach the total requested amount of $1.85 million (*see* Dkt. No. 165 at 9). In addition to attorney's fees, plaintiff seeks $43,063.76 in costs (*id.* at 10).

Plaintiff originally appended three types of time records to her motion for attorney's fees. The first type showed hours and rates block-billed for individual attorneys and staff who worked on the case. For example (Dkt. No. 165-2 at 2):

|  | | 2015 | | 2016 | | Total Hours | Historical Lodestar |
|---|---|---|---|---|---|---|---|
|  | Position | Hours | Rates | Hours | Rates | | |
| Patricia I. Avery | Partner | 120.8 | $825 | 266.8 | $850 | 387.6 | $326,436.00 |

The second type showed hours block-billed by project. For example (Dkt. No. 165-4 at 2):

| Project Description | Hours | Historic Lodestar |
|---|---|---|
| Class Certification Motion | 328.1 | $226,013.50 |

The third type broke down expenses. For example (Dkt. No. 165-6 at 2):

| Description | Expense |
|---|---|
| Online Legal Research | $17,118.05 |

---

[*] Defendant does not challenge plaintiff's premise that this proposed class settlement constitutes a "successful action" within the meaning of TILA, and both sides agree in any case that the lodestar method is the appropriate framework here (*see* Dkt. Nos. 166 at 7, 169 at 2). This order therefore uses the lodestar method to calculate reasonable attorney's fees for class counsel.

4

The organization and block billing of attorney and staff time in those time records made it extremely difficult to accurately assess the reasonableness of time expended in this litigation. In the entries reproduced above, for example, there is no way to determine what tasks Attorney Avery worked on in racking up 387.6 hours, or to determine which attorneys or staff spent the 328.1 hours dedicated to the class certification motion. In short, those time records inadequately supported the hours claimed.

Plaintiff, however, submitted a reply declaration with new charts reorganizing time records by both the project and the individual(s) who worked on it (Dkt. No. 173). As stated in the undersigned's Supplemental Order, "Reply declarations are disfavored. Opening declarations should set forth all facts on points foreseeably relevant to the relief sought. Reply papers should not raise new points that could have been addressed in the opening" (Dkt. No. 19 at 3). As the party seeking attorney's fees, plaintiff should have included any and all documentation necessary to support her request in her initial motion instead of sandbagging and producing a voluminous reply declaration with reformed time records only *after* defendant submitted its opposition.

Nonetheless — and in large part because the Court would otherwise have to rely on exceedingly unhelpful block-billed time records to infer the reasonableness (or lack thereof) of class counsel's hours and rates — the Court has reviewed the new charts submitted in plaintiff's reply declaration. *First*, this order excludes the following entries from class counsel's lodestar because the reasonableness of each entry is inadequately supported by its description (Dkt. No. 173-1 at 153-157):

- $2,640 for "Case Opening and Pro Hac Vice Motions" billed by Patricia Avery (partner) (two associates from Attorney Avery's firm also billed time on this project).

- $80,256 for "Discussions Regarding Latasha McLaughlin's Mortgage" billed by Patricia Avery (partner), Matthew Insley-Pruitt (associate/partner), Emily Madoff (partner), and Adam Blander (associate).

5

- $4,302.50 for "Other Administrative Tasks" billed by Matthew Insley-Pruitt (associate/partner) and Adam Blander (associate).
- $3,312 for "Case Opening and Pro Hac Vice Motions" billed by Kristin Moody (partner) (an associate and a paralegal from Attorney Moody's firm also billed time on this project).

Excluding the aforementioned entries reduces class counsel's lodestar of $1,476,421.75 to $1,385,911.25.

*Second*, this order reduces by 75 percent the $58,933 billed for "Briefing on Impact of *Spokeo Inc. v. Robins*" by Patricia Avery (partner), Matthew Insley-Pruitt (associate/partner), Emily Madoff (partner), Adam Blander (associate), Melissa Gianfagna (paralegal), Kristin Moody (partner), Chowning Poppler (associate), and Kathy Becker (paralegal). This block-billed entry fails to show why class counsel dedicated so many hours and individuals to plaintiff's briefing on *Spokeo*. To put this entry in context, a prior order had allotted each side a ten-page brief and ten-page reply in which to discuss *Spokeo*'s impact on class certification (Dkt. No. 109). Plaintiff's brief contained three substantive pages (Dkt. No. 111) and her reply contained just over five substantive pages (Dkt. No. 114). That is the work product for which eight attorneys and paralegals now seek to bill almost sixty thousand dollars. Class counsel's lodestar is therefore further reduced from $1,385,911.25 to $1,341,711.50.

*Third*, class counsel billed $53,045 for "Defendant's Failure to Answer and Motion to Preclude Affirmative Defenses." Plaintiff brought that motion — approximately three pages in length — on March 15, 2016 (Dkt. No. 98). On March 28, 2016, plaintiff withdrew the motion, having stipulated to allow defendant to file its answer and affirmative defenses following a meet and confer between counsel for both sides (Dkt. No. 100). After considering arguments from both sides as to the reasonableness of plaintiff's conduct, this order concludes that, while the motion itself was not inherently unreasonable, it does not merit a price tag of over fifty thousand dollars. This order accordingly reduces the amount billed for that motion by 75 percent, further reducing class counsel's lodestar from $1,341,711.50 to $1,301,927.75.

*Fourth*, in addition to the specific entries addressed above, other hours and amounts billed by class counsel are suspect but not readily susceptible to adjustment. For example, class counsel billed a total of $136,616.50 for "Motion to Dismiss and Initial Response to Complaint." This order recognizes the importance of dispositive motions but notes in comparison that class counsel billed only $10,860.50 for "Defendant's Motion for Summary Judgment." From the short and vague project descriptions, it is not apparent how anomalies like this should be reconciled. Much of the problem is, of course, attributable to class counsel's decision to block-bill using such non-descriptive descriptions. In fact, both firms expressly admit that their categorization of billed time into "projects" is "approximate" because they do not maintain billing records based on "discrete tasks" (Dkt. Nos. 165-4 at 2, 165-5 at 2). To account for other unreasonable charges potentially hidden within class counsel's block-billed and approximately described entries — which seem probable in light of the numerous inadequacies and red flags apparent even from said block-billed entries — this order further discounts class counsel's lodestar by 30 percent, from $1,301,927.75 to $911,349.43. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).

The Court has considered defendant's other criticisms of class counsel's time records and concludes that said criticisms do not warrant further reduction of class counsel's lodestar. For example, despite arguing at length that class counsel's block billing precludes any accurate determination of reasonableness, defendant suggests the hours billed "were unnecessary, duplicative, or excessive" and protests that class counsel engaged in "overstaffing" (Dkt. No. 169 at 5–7). Defendant cannot have it both ways. Inasmuch as class counsel's block billing is inadequate to support an inference of reasonableness, it is similarly inadequate to support an inference that class counsel billed "unnecessary, duplicative, or excessive" hours or engaged in overstaffing (with some exceptions already accounted for above).

The Court has also considered plaintiff's arguments in support of a fee multiplier and concludes that no multiplier is warranted under the circumstances of this case. The lodestar of $911,349.43 adequately compensates class counsel for their skill, experience, and performance in this litigation.

7

1    Plaintiff also requests $43,063.76 in costs.  This order concludes that the amount
2 requested — which includes, for example, legal research fees, court fees, expert fees, copying
3 expenses, and travel and lodging expenses — is reasonable given the complexity and duration
4 of this litigation.

\*          \*          \*

6    Plaintiff also seeks five thousand dollars as an incentive award.  As stated, defendant
7 does not oppose this request.  Plaintiff submitted a declaration stating (Dkt. No. 164 at 2):

> I would estimate that I have spent in excess of one hundred hours in connection with this lawsuit, which included (i) reviewing nearly every substantive brief filed by Class Counsel; (ii) communicating with Class Counsel on the phone and by email; (iii) identifying, collecting, and sending documents to Counsel for discovery; (iv) sitting for a deposition while I was undergoing medical treatment in Arizona; and (v) reviewing the Settlement Agreement.

Plaintiff did not submit time records or other documentation to support the foregoing estimate.

As cautioned in the undersigned's "Notice Regarding Factors to be Evaluated for Any Proposed Class Settlement," "A request for an incentive payment is a red flag" (Dkt. No. 17 at 5).  Incentive awards pose the risk that a class representative has gone along with a settlement, not because it secures a good outcome for the class, but simply for the incentive award.  Such awards should therefore be subject to careful scrutiny.

In light of the foregoing, this order agrees that an incentive award is appropriate here in recognition of plaintiff's service but reduces the amount to three thousand dollars.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for final approval of the class settlement is **GRANTED**, and her motion for attorney's fees is **GRANTED IN PART**.  As stated, this order approves **$911,349.43** in attorney's fees, **$43,063.76** in costs, and **THREE THOUSAND DOLLARS** as an incentive award to plaintiff.

If either side wishes to continue litigating the amount of the fee award, then the Court will appoint a special master to further evaluate said amount.  The parties will share responsibility for paying the special master's fees except that, if one side requests a special

8

1  master but fails to substantially shift the amount awarded in their favor, then that side will likely
2  pay most, if not all, of the special master's fees.

3  By **MARCH 22 AT NOON**, each side shall file a statement either unequivocally accepting
4  $911,349.43 as the amount of attorney's fees awarded in this action, or requesting appointment
5  of a special master to further evaluate the same.

7  **IT IS SO ORDERED.**

9  Dated:  March 15, 2017.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9